KIVA CONSTRUCTION AND
ENGINEERING, INC.

v.

INTERNATIONAL FIDELITY
INSURANCE COMPANY.

Civ. A. No. 89–1628–L.

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Oct. 31, 1990.

Michael T. Tusa Jr., Walker, Bordelon,
Hamlin, Theriot & Hardy, New Orleans,
La., for plaintiff.

**754**

Daria L. Burgess, Simon, Peragine, Smith & Redfearn, Lloyd N. Shields, New Orleans, La., for Inter. Fidelity Ins. Co.

Liskow & Lewis, John M. Wilson and Joe B. Norman, New Orleans, La., for Southern Natural Gas Co.

NAUMAN S. SCOTT, District Judge.

### RULING

Before the court are Cross Motions for Partial Summary Judgment. One motion is filed by plaintiff Kiva Construction & Engineering, Inc. (Kiva). The other motion is filed by defendant Southern Natural Gas Company (Southern).

In September 1986, Kiva contracted with Southern to perform bank stabilization/restoration work on the Bogue Chitto River near Franklinton, Louisiana. Pursuant to the contract, Kiva provided Southern with a performance bond in the amount of $495,042.30.[1] The performance bond was issued by co-defendant International Fidelity Insurance Company (IFIC), incorporates by reference the Kiva–Southern contract, and guarantees that Kiva would perform faithfully and promptly its contract with Southern.[2] The performance bond also contains a suit limitation clause that provides: "Any suit under this bond must be instituted before the expiration of two years from the date on which final payment under the contract falls due." On the other hand, although the IFIC performance bond incorporates by reference the Kiva–Southern contract, the contract between Kiva and Southern does not contain a provision limit-ing the time in which suit may be brought for a breach.

As security for the performance bond, Kiva furnished IFIC with a letter of credit in the amount of $49,500.00. The letter of credit was drawn on Patterson State Bank and had an expiration date of March 9, 1989. To draw on the letter of credit, IFIC had to certify that Southern had made a claim against the performance bond for payment, or that there remained a possible outstanding claim which could trigger payment under the performance bond.

Kiva completed its work for Southern in November 1987 and requested Southern to sign and send to IFIC an "Owner's Release Letter" that would release IFIC from its obligations under the performance bond and cause IFIC to return to Kiva the letter of credit that Kiva had provided as security to IFIC for the performance bond. Despite the fact that Southern accepted Kiva's work, certified that the work was complete and made full payment to Kiva of all monies due and owing under the contract, Southern refused to release the IFIC performance bond. Southern maintained that IFIC was bound under the performance bond until the expiration of a ten year warranty period contained in the contract Kiva. In that provision, Kiva warranted that its work and the materials used would be defect free for ten years from the date on which Southern made final acceptance of the work. The warranty provision further provided:

Upon notice to Contractor by Company, Contractor agrees to remedy, at Contractor's sole risk, cost and expense, any and

---

1. The contract provided:

   **11. Performance Bond.** If required by Company [Southern] at any time, Contractor [Kiva] shall furnish a Performance Bond in the Contract amount or such amount as may be required by Company on a form prepared and furnished by Company guaranteeing that Contractor will perform faithfully, promptly and with due diligence, all of the terms and provisions of this Contract on its part to be performed, including all of the undertakings, obligations and liabilities of Contractor or any subcontractor, arising hereunder, or under Plans and Specifications attached. Said Bond shall be secured through a source and in a bonding company designated by Compa-ny. Failure of Contractor to furnish such Performance Bond within five (5) days after the execution of this Contract or the refusal of a satisfactory surety company to become surety for Contractor shall entitle Company, at its option, to cancel and terminate this Contract. Cost of such Bond shall be paid by Company.

2. Because this is a performance bond, as opposed to a labor and material payment bond, the Private Works Act, La.R.S. 9:4801 *et seq.*, has no application to this dispute. *Congregation of St. Peter's v. Simon*, 497 So.2d 409, 412 (La.App. Ct.3d Cir.1986) (*citing* La.R.S. 9:4812(C)(1) & (C)(2)).

all defect(s) and damage directly or indirectly caused by such defect(s) to Company's and Contractor's satisfaction within the time specified by Company. If for any reason Contractor fails to remedy said defect(s) and damage within the time specified, upon notice to Contractor, Company may remedy, or cause to be remedied, at Contractor's sole risk, cost and expense, such defect(s) or damage. Company shall invoice Contractor for such costs and Contractor shall pay said invoice within thirty (30) days of receiving the invoice.

Southern's refusal to release the performance bond allowed IFIC to draw on the letter of credit. On March 8, 1989, one day before the expiration date, IFIC drew on the letter of credit for the full amount of $49,500.00, certifying to Patterson State Bank that a possible claim against the performance bond remained outstanding as a result of the ten year warranty provision in the Kiva–Southern contract. Upon receiving the demand and the proper certification, Patterson State Bank remitted the proceeds of the letter of credit to IFIC.

Kiva's motion for partial summary judgment seeks return of the proceeds paid from the letter of credit to IFIC. Kiva contends that the performance bond's two year suit limitation provision prohibits any claims against the performance bond being made by Southern after November 30, 1989 because Southern made final payment under the contract to Kiva on or around November 30, 1987 and, as of this date, Southern has not filed any suit or made any claim for payment against the performance bond. Therefore, Kiva believes that IFIC should be ordered to return the $49,500.00 it drew under the letter of credit. Southern's motion seeks to have this court declare that the performance bond guarantees all of Kiva's obligations under its contract with Southern, including the warranty obligation. Southern contends that be-

cause the performance bond incorporated the entire contract with Kiva, the ten year warranty provision in the contract supersedes the two year suit limitation in the bond.[3] Southern's motion also seeks dismissal of Kiva's conspiracy claim.

### 1. *The Performance Bond:*

A suretyship is an accessory promise by which a person binds himself to fulfill the obligation of another upon the failure of the latter to do so. La.Civ.Code art. 3035. The performance obligation in this case, as detailed in the Kiva–Southern contract, called for Kiva to build an access road, install a diversion dike, support four gas pipelines with sand cement bags, cover the exposed pipelines with dirt fill, and cover the dirt fill with erosion control mats. IFIC's performance bond guaranteed only the completion of this construction obligation. The terms of the performance bond stated that if Kiva was declared in default, that is if Kiva failed to complete the above mentioned construction obligation, then IFIC may promptly remedy the default, or shall promptly

1) Complete the Contract in accordance with its terms and conditions, or

2) Obtain a bid or bids for completing the Contract in accordance with its terms and conditions, and upon determination by Surety of the lowest responsible bidder, or, if the Owner elects, upon determination by the Owner and the Surety jointly on the lowest responsible bidder, arrange for a contract between such bidder and Owner, and make available as work progresses (even though there should be a default or a succession of defaults under the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the

---

**3.** Although Kiva's motion for summary judgment is directed at IFIC, IFIC's "opposition" memorandum does not actually controvert Kiva's position. However, IFIC does not support Southern's position either. Instead, IFIC states that both Kiva's and Southern's conten-

tions are supportable. Therefore, IFIC contends that it must continue to hold the proceeds of the letter of credit as continuing security until a judicial determination can be made "to resolve its legal dilemma."

amount set forth in the first paragraph hereof. The term "balance of the contract price," as used in this paragraph, shall mean the total amount payable by Owner to Contractor under the Contract and any amendments thereto, less the amount properly paid by Owner to Contractor.

Clearly, then, the terms of the performance bond speak only to finishing the job in the event that Kiva failed to do so. Thus, Southern's right to draw on the performance bond was limited solely to the instance where Kiva failed to meet its construction obligation. Accordingly, we hold that the ten year contractual warranty is not and has never been supported by IFIC's performance bond.

■ Civil Code article 3040 provides that "[s]uretyship may be qualified, conditioned, or limited in any lawful manner." In *Con-Plex v. Vicon, Inc.,* 448 So.2d 191 (La. App.Ct. 1st Cir.1984), the court held that a surety bond could lawfully include a two year right of action limitation upon the right to sue against the bond even though such a limitation is shorter than the general prescriptive period of ten years for contracts. Thus, the two year right of action limitation in the IFIC performance bond is a lawful condition for a contract of surety. We also think that the suit limitation provision is clear and unambiguous as well as valid and enforceable.

■ In this instance, IFIC limited its promise to become responsible for Kiva's construction failures to a two year period from the date final payment under the Kiva–Southern contract was made. Because Southern accepted the performance and made final payment on or about November 30, 1987, the prescriptive period of the performance bond began to run. As no suit was filed within the two year period after November 1987, IFIC's performance bond expired in November 1989. Accordingly, we hold that IFIC must return to Kiva the $49,500.00 which it drew under the letter of credit issued in its favor by Patterson State Bank.

### 2. *The Conspiracy:*

In its complaint, Kiva alleged that IFIC and Southern conspired to extend the surety coverage and effective time period of the performance bond to include the ten year warranty provision in the Kiva–Southern contract. As a result of this conspiracy, Kiva alleges that IFIC tortiously converted the $49,500.00 under the letter of credit for its own use, and that Southern benefited from the alleged conspiracy by securing performance bond coverage for an additional ten years without having to pay à further bond premium.

■ Civil Code article 2324(A) provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." The actionable element in an article 2324 claim is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually committed in whole or in part. *Silver v. Nelson,* 610 F.Supp. 505, 516 (E.D.La.1985) (citations omitted). However, to recover, a plaintiff must be able to prove that an agreement existed between the accused defendants to commit the illegal or tortious act which resulted in the plaintiff's injury. *Thomas v. City of New Orleans,* 687 F.2d 80, 83 (5th Cir.1982). In other words, Kiva must prove not only that a conspiracy existed, but also that the alleged conspiracy was designed for Kiva's detriment. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 583–86, 106 S.Ct. 1348, 1354–56, 89 L.Ed.2d 538 (1986).

■ Southern claims that there is no evidence to suggest any collusion between itself and IFIC to commit an illegal or tortious act injurious to Kiva. To support its position, Southern points to the affidavits of Carol Gibb and Lee Walker as support for its position.

Mr. Walker, a Senior Engineer with Southern who, along with others, negotiated the contract with Kiva, states that he "had no involvement in Kiva's obtaining of the performance bond from IFIC, and [that] he had no involvement in or aware-

ness of the establishment of a letter of credit at the Patterson State Bank as security for the performance bond." Walker also stated that he did not "have any contact with IFIC or any person representing or purporting to act on behalf of IFIC with regard to the letter of credit at Patterson State Bank." Instead, Mr. Walker states that his "only contact with IFIC was ... receipt from Kiva of a General Form Status Inquiry and a proposed owner's release letter, ... and a follow-up letter regarding the General Form Status Inquiry received from ... Surety Bond Brokers of Louisiana, Inc." Surety Bond Brokers is IFIC's local Louisiana agent.

Ms. Gibb, an insurance administrator for Sonat Inc., the parent corporation of Southern, states that she advised Surety Bond Brokers that "Southern could not execute the requested owner's release letter ... because of the extended warranty provision and because of a corporate practice not to release bonds." Ms. Gibb affirmatively stated that she had no contact with IFIC, Surety Bond Brokers, Patterson State Bank, or any other person regarding the letter of credit, and that she did not even have knowledge of the establishment of the letter of credit in connection with the performance bond.

We hold that these affidavits adequately support Southern's burden of demonstrating initially the lack of any evidence to indicate the existence of an agreement between itself and IFIC to commit an illegal or tortious act to Kiva's detriment. Consequently, the burden shifts to Kiva to demonstrate the existence of such evidence.

To meet this burden, Kiva relies on its response to Interrogatory No. 1 of Southern's First Interrogatories. Interrogatory No. 1 requested that Kiva "state in detail the factual basis" for its conspiracy claim. Kiva's answer states in relevant part:

After acceptance of the work by ... Southern, Kiva sought to obtain a release from [Southern] in a form required by [IFIC] so that Kiva's letter of credit could be cancelled. Southern declined to furnish such a letter initially averring that surety bonds expire by their own terms within one year following acceptance.... Later Southern claimed that the bond covered the ten year warranty found in the contract. One year after final acceptance of the job ..., Kiva again sought to obtain release of its collateral from IFIC *but was advised by IFIC and Southern that they now considered the Performance bond to secure the contractual ten year warranty obligation.* Kiva sought to negotiate a settlement with Southern and IFIC whereby a Maintenance Bond, paid for by the owner of Southern Natural Gas, would be substituted for their claim that Kiva's Performance Bond and security would be tied up for ten years. Those efforts were stalled until shortly before the letter of credit was to expire ... at which time IFIC wrote the bank demanding immediate payment of $49,500.00. That money was paid by the Patterson State Bank to IFIC and IFIC has since retained those funds, ... *in return for which IFIC has agreed with Southern to continue the bond for an indefinite period, not less than eight and one-half years. [Southern] has avoided its obligation to pay for the premium on a Maintenance Bond, and [Kiva] has obtained through concerted action with Southern ... income from monies belonging to Kiva as compensation for their assumed suretyship on Kiva's contractual warranty obligation.*

(emphasis added).

We hold that summary judgment must be granted on this issue because the above quoted interrogatory response fails to show the existence of such evidence as would cause a jury to return a verdict in Kiva's favor. To prevent the entry of summary judgment once the mover has met its burden, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. However, there is not one specific fact in this response that would show or tend to show the existence of an agreement between Southern and IFIC to commit an illegal or tortious act against Kiva. Rather, the interrogatory response merely

states in a conclusory manner that an agreement to that effect existed. As such, summary judgment is proper.

Accordingly, we GRANT Kiva's motion for summary judgment and we GRANT IN PART and DENY IN PART Southern's motion for summary judgment.

DONE AND SIGNED.