# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 15, 2016

Lyle W. Cayce
Clerk

No. 15-30393

SNOW INGREDIENTS, INCORPORATED; SIMEON, INCORPORATED; THEODORE EISENMANN; VAN'S SNOWBALLS; SOUTHERN SNOW MANUFACTURING COMPANY, INCORPORATED; PLUM STREET SNOBALLS; PARASOL FLAVORS, L.L.C.,

Plaintiffs - Appellants Cross-Appellees,

v.

SNOWIZARD, INCORPORATED; RONALD R. SCIORTINO; JACK E. MORRIS; KENNETH L. TOLAR,

Defendants - Appellees Cross-Appellants.

Appeals from the United States District Court
for the Eastern District of Louisiana

Before ELROD, GRAVES, and COSTA, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

As the seasons turn from spring to summer in New Orleans, locals know to expect familiar changes. The days get longer. The temperature rises. And in the humid warmth of summer, long lines grow outside the most popular sno-ball shops. The parties in this case have come to expect another predictable event with the changing seasons—a visit from a process server setting off a new round of litigation. What began as a flurry of cease-and-desist letters between the companies has turned into a blizzard of patent, trademark, and

No. 15-30393

antitrust litigation. Each party has attempted to use the courts to freeze the other out of the sno-ball market.

In the past ten years, SnoWizard and Southern Snow have faced off in Louisiana state court, federal district court, before the Patent and Trademark Office ("PTO"), in the Federal Circuit, and in this court. In the present appeal, Southern Snow challenges the district court's dismissal of its claims under Rule 12(b)(6) and SnoWizard cross-appeals the district court's denial of its motions for sanctions against Southern Snow. Because most of Southern Snow's claims are precluded by prior litigation and because the remaining claims fail to state a valid ground for relief, we AFFIRM the district court's dismissal. Because the district court did not abuse its discretion when it denied SnoWizard's motion for sanctions, we AFFIRM its denial of sanctions.

## I.

Southern Snow Manufacturing Company, Van's Snoballs, Parasol Flavors, Snow Ingredients, and the related individuals (collectively, "Southern Snow") and SnoWizard are sellers of flavored shaved ice confections.[1]

Between 2003 and 2008, SnoWizard acquired a number of patent and trademark rights. SnoWizard used these to conjure up an avalanche of lawsuits against their competitors in the sno-ball industry. Litigation between the present parties began when Southern Snow sued SnoWizard in 2006. That first lawsuit was brought in Louisiana state court and, after removal, was

---

[1] The products that are the center of this dispute are New Orleans-style sno-balls, not snow cones. As all true confectionary connoisseurs know, a sno-ball is a dessert treat made from finely shaved ice that can be consumed with a straw or spoon while a snow cone is made using coarser crushed ice and is generally eaten directly cone to mouth. Snow cones originated in Texas and are the invention of Samuel "King Sammie" Bert who first sold the treats at the 1919 Texas State Fair. Sno-balls, although often associated with New Orleans, were first made in Baltimore from the shavings left over on ice shipments moving from New England to the American South. *See* Mariel Synan, *The Colorful History of Shaved Ice*, HUNGRY HISTORY, http://www.history.com/news/hungry-history/the-colorful-history-of-shaved-ice.

2

No. 15-30393

given docket No. 06-9170 in the Eastern District of Louisiana. Over the next few years, Southern Snow brought additional actions (E.D. La. No. 09-3394, E.D. La. No. 10-0791, and E.D. La. No. 11-1499) that were all consolidated into the original 06-9170 suit. In addition to the Consolidated Cases, the parties sued each other in federal court in the same district court in case Nos. 11-0880, 10-4275,[2] 11-0515, and 12-2796. Relations between the parties are frosty, to say the least.  Only the Consolidated Cases and No. 10-4275 are relevant here.

Because the district court below concluded several claims were precluded by the Consolidated Cases, we restate the outcome of that case. In the Consolidated Cases, the claims and counterclaims addressed the scope, validity, and ownership of patents and trademarks and the fairness of the companies' business practices. The district court dismissed more than 175 of Southern Snow's claims at summary judgment. *S. Snow Mfg. Co. v. Snow Wizard Holdings, Inc.*, 829 F. Supp. 2d 437 (E.D. La. 2011). Southern Snow amended its complaint. SnoWizard obtained 12(b)(6) dismissal of some claims and won summary judgment on others, whittling the suit down from eighty-five claims to fifteen. *S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 912 F. Supp. 2d 404 (E.D. La. 2012), *aff'd*, 567 F. App'x 945 (Fed. Cir. 2014); *S. Snow Mfg Co. v. SnoWizard Holdings, Inc.*, 921 F. Supp. 2d 527 (E.D. La. 2013), *aff'd in part, rev'd in part*, 567 F. App'x 945 (Fed. Cir. 2014).

The parties tried the remaining claims. On the seventh day of an eight-day trial, the parties entered into a Consent Judgment[3] that disposed of many of the claims between the parties including some that had already been addressed at summary judgment. The jury decided the remaining claims and

---

[2] The 10-4275 action was dismissed without prejudice and the claims made in it were re-asserted in 11-1499, which was consolidated with 06-9170. In the 11-1499 suit, several other similarly situated companies joined with Southern Snow as plaintiffs.

[3] *S. Snow Mfg. Co. v. SnoWizard Holdings Inc.*, No. 06-9170 (E.D. La. Feb. 27, 2013), ECF No. 652.

the district court entered judgment for Southern Snow's co-plaintiff on a single claim.[4]

Southern Snow and SnoWizard both appealed the Consolidated Cases to the Federal Circuit. The Federal Circuit reversed the district court's determination that one of SnoWizard's asserted patents (the '879 patent) was valid and therefore vacated the judgments against Southern Snow relating to that patent. *S. Snow*, 567 F. App'x at 964. The Federal Circuit sustained the validity of another of SnoWizard's patents (the '459 patent) against Southern Snow's attempt to obtain a declaratory injunction holding the patent unenforceable because of SnoWizard's inequitable conduct. *Id.* at 954. The Federal Circuit affirmed the district court's conclusion that SnoWizard's claims related to the SNOBALL trademark were groundless and brought for the purpose of harassment. *Id.* The Federal Circuit also affirmed the verdict

---

[4] The court entered judgment for Plum Street Snoballs (a Southern Snow co-plaintiff) establishing that Plum Street owned a valid and enforceable trademark for the unregistered term ORCHID CREAM VANILLA and that SnoWizard used a reproduction of that trademark in a manner likely to cause confusion in violation of Lanham Act §§ 43(a), 35; 15 U.S.C. §§ 1125(a), 1117. The jury also found that SnoWizard's conduct was "unethical, oppressive, unscrupulous, or deceptive" and that Plum Street Snoballs was entitled to the costs of the action.

The jury rendered judgment against Southern Snow (in favor of defendant SnoWizard) on all the plaintiffs' other causes of action including additional trademark infringement claims tied to ORCHID CREAM VANILLA and claims involving the plaintiffs' asserted trademarks in SNOW SWEET. The jury similarly found against Southern Snow on its assertions that SnoWizard had fraudulently asserted trademark rights in ORCHID CREAM VANILLA, SNOBALL, SNOSWEET, SNOBALL MACHINE, HURRICANE, MOUNTAIN MAPLE, BUTTER-CREAM, BUTTERED POPCORN, CAKE BATTER, CAJUN RED HOT, COOKIE DOUGH, DILL PICKLE, GEORGIA PEACH, KING CAKE, MUDSLIDE, PRALINE, and WHITE CHOCOLATE & CHIPS.

The jury found for SnoWizard on six of SnoWizard's eight counter-claims, concluding Southern Snow's trademark infringement claims for SNOBALL "were groundless, brought in bad faith, or were brought for purposes of harassment"; that SnoWizard owned valid trademarks in CAJUN RED HOT, WHITE CHOCOLATE & CHIPS, MOUNTAIN MAPLE, and SNOSWEET, which Southern Snow or co-plaintiff Parasol Flavors infringed; and that SnoWizard and Sciortino owned a valid patent for an icemaker that Southern Snow infringed. *S. Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.*, No. 06-9170 (E.D. La. Mar. 5, 2013) (judgment on jury verdict).

No. 15-30393

that Southern Snow and co-plaintiff Parasol Flavors infringed SnoWizard's SNOSWEET, CAJUN RED HOT, WHITE CHOCOLATE & CHIPS, and MOUNTAIN MAPLE trademarks. *Id.* at 955–56. The Federal Circuit also upheld the verdict Parasol Flavors obtained against SnoWizard that SnoWizard infringed its ORCHID CREAM VANILLA sno-ball trademark. *Id.* at 957. The court affirmed the district court's ruling against Southern Snow on Southern Snow's claim that SnoWizard's attempt to obtain trademarks during litigation violated 15 U.S.C. § 1120. *Id.* at 959. Finally, the court affirmed the district court's dismissal of Southern Snow's antitrust and RICO claims. *Id.* at 962, 963.

In June 2012, some nine months before the trial and jury verdict in the Consolidated Cases, Southern Snow filed a complaint in the Eastern District of Louisiana reiterating many of the claims then under dispute in the Consolidated Cases and alleging that SnoWizard's actions in docket Nos. 10-4275 and 11-0515 constituted additional illegal practices. After SnoWizard answered, Southern Snow filed a Second Amended and Supplemented Complaint (the "Second Amended Complaint"). This was still one month before the trial in the Consolidated Cases.[5] Shortly after the jury verdict in the Consolidated Cases, SnoWizard moved to dismiss the Second Amended Complaint for failure to state a claim. The judge granted the motion to dismiss. Southern Snow appeals that dismissal.

Southern Snow alleged a full menu of claims in the Second Amended Complaint. These included claims that SnoWizard, its owner, and its attorneys

---

[5] The First Amended complaint included Theodore Eisenmann, Van's Snowballs, and Plum Street Snoballs as plaintiffs. Those parties were not listed on the Second Amended Complaint. Southern Snow urges that they are erroneously listed as appellants here because they did not join the Second Amended Complaint, while SnoWizard insists they are valid cross-appellees because the second Rule 11 sanctions motion in SnoWizard's cross appeal is tied to the filing of the First Amended complaint.

engaged in a criminal racket based on obstruction of justice; that SnoWizard violated state and federal antitrust laws by engaging in sham litigation; that SnoWizard fraudulently registered for trademarks in WHITE CHOCOLATE & CHIPS and CAJUN RED HOT; that SnoWizard violated state and federal laws prohibiting unfair trade practices; that SnoWizard committed fraud and malicious prosecution[6]; and that SnoWizard's attorneys are liable as co-conspirators in all of these violations.

After Southern Snow filed the First Amended Complaint in this case, SnoWizard moved for Rule 11 sanctions, arguing that counsel for Southern Snow filed RICO claims "which manifestly are not warranted by existing law" solely to harass the defendants. The district court denied the motion. SnoWizard again moved for sanctions after Southern Snow filed the Second Amended complaint, arguing that Southern Snow's RICO claims were meritless and served only to harass the defendants.[7] The district court denied the motion. SnoWizard appeals both denials.

**II.**

We review a motion to dismiss pursuant to Rule 12(b)(6) *de novo*. *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014). The Federal Rules require that a plaintiff allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007); Fed. R. Civ. Pro. 8(a). We accept all well-pleaded factual allegations as true and interpret the complaint in the light most favorable to the plaintiff, *Spicer*, 751 F.3d at 365, but "[t]hreadbare recitals of the elements of a cause of

---

[6] The malicious prosecution claims relate to only two of the prior cases, No. 10-4275, and No. 11-0515. No. 10-4275 was dismissed without prejudice and the claims were refiled in the Consolidated Cases. No 11-0515 settled.

[7] Because SnoWizard had already sought sanctions against Southern Snow in a related proceeding, the two Rule 11 motions brought in the present case are the Second and Third Sanctions Motions.

action, supported by mere conclusory statements" cannot establish facial plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The district court dismissed different claims on different grounds. We examine the dismissed claims grouped by the grounds for the dismissal.

## A. *Res Judicata*

"The res judicata effect of a prior judgment is a question of law that a reviewing court analyzes *de novo*." *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). The rule is comprised of two distinct but related doctrines: (1) true *res judicata* (or claim preclusion)[8] and (2) collateral estoppel (or issue preclusion). *Id.* The relevant doctrine here is true *res judicata* or claim preclusion. Claim preclusion bars the litigation of claims that have been or should have been raised in an earlier suit. *Petro-Hunt L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004).[9] Under federal common law:

> [t]he test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions.

*Test Masters*, 428 F.3d at 571. This court uses a transactional test to determine whether two suits involve the same cause of action, asking whether the facts

---

[8] Generally, a true res judicata argument (claim preclusion) is an affirmative defense that should not be the basis for a 12(b)(6) dismissal, but this bar is waived by the appellants' failure to assert it on appeal. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

[9] The plaintiffs argue that Louisiana's claim preclusion standard governs, while the defendants assert the federal test applies. Federal common law on choice of law dictates that the standard for the claim preclusive effect of a federal court judgment depends on the grounds for federal jurisdiction in the original suit. When the original suit is based on the federal court's diversity jurisdiction, "the law that would be applied by state courts in the State in which the federal diversity court sits" governs the judgment's preclusive effect. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). But when the prior judgment was based on the court's federal question jurisdiction, a single federal standard applies. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Because the Consolidated Cases were heard in federal court based on federal question jurisdiction, the federal rule governs here. Wright, Miller, & Cooper, *Federal Practice and Procedure: Jurisdiction* 2d. § 4466.

in the two suits are "related in time, space, origin, or motivation, whether they form a convenient trial unit," *id.*, in short, whether they are based on the "same nucleus of operative facts." *N.Y. Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000).

The parties in the present suit, with the exception of Tolar and Morris, were all parties in the Consolidated Cases. Tolar and Morris represented SnoWizard in the Consolidated Cases but were not themselves parties.[10] Similarly, the competence and jurisdiction of the prior court is not challenged by the parties. The prior action, the Consolidated Cases, was concluded on its merits with judgment entered pursuant to a jury verdict. *S. Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.*, No. 06-9170 (E.D. La. Mar. 5, 2013) (judgment on jury verdict).

Because the parties agree that elements 1–3 are met, the question of claim preclusion for the claims against the defendants other than Morris and Tolar turns on whether the disputed counts satisfy this court's transactional test. As the district court noted, all of these claims argue that SnoWizard's conduct over the past decade unfairly disadvantaged the plaintiffs in violation of a variety of state and federal laws. All of the claimed patents and trademarks were at issue in the Consolidated Cases or were part of the same pattern of conduct and are therefore precluded. Counts 1–8, addressed in the following list, all draw from the same facts litigated in the prior suit and are therefore precluded against SnoWizard.

*Count 1*: The Second Amended Complaint alleges that SnoWizard's litigation before the PTO and the federal courts against Southern Snow qualifies as obstruction of justice and a RICO violation. The litigation tactics

---

[10] We discuss in Part II.C Southern Snow's claims for conspiracy against Morris and Tolar.

No. 15-30393

that are the substance of these claims were the same facts Southern Snow asserted in the Consolidated Cases in support of its mail and wire fraud RICO claims. Because Southern Snow failed to allege facts establishing the predicate criminal offense, the district court dismissed Southern Snow's RICO claims. *S. Snow Mfg. Co. v. SnoWizard*, 567 F. App'x at 963 (upholding 12(b)(6) dismissal of civil-RICO claims). Southern Snow now points to the same facts as the basis for its new RICO claims with obstruction of justice as the predicate criminal activity. Southern Snow, however, cannot revive old facts under a new legal theory. True *res judicata* bars recovery when a party seeks to relitigate the same facts even when the party argues a novel legal theory. *See Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994) (under the transactional test "the critical issue is not the relief requested or the theory asserted but whether the plaintiff bases the two actions on the same nucleus of operative facts").

*Count 2*: The Second Amended Complaint alleges that SnoWizard attempted to monopolize the market over a period of years through actions taken in court and before the PTO including its applications for the CAJUN RED HOT and WHITE CHOCOLATE & CHIPS trademarks. The jury in the Consolidated Cases considered monopolization claims relating to these exact marks and found for SnoWizard because there was not a dangerous probability that SnoWizard would achieve its goal of monopoly power. *Southern Snow Mfg. Co. v. SnoWizard*, No. 06-9170 (E.D. La. Aug. 1, 2013) (Verdict Form), ECF No. 709-1 at 7–8. This claim is therefore precluded.[11]

---

[11] Southern Snow argues that because the district court dismissed some of its claims in the Consolidated Cases as barred by the *Noerr–Pennington* doctrine, those claims did not receive a final judgment on the merits. A precluded claim, however, need not have been decided *by a jury*; a prior court must merely have brought the claim to a final judgment. *See, e.g., Brooks v. Raymond Dugat Co.*, 336 F.3d 360, 362 (5th Cir. 2003) ("A dismissal with

No. 15-30393

*Count 3*: The Second Amended Complaint alleges fraudulent registration of the WHITE CHOCOLATE & CHIPS trademark. The jury in the Consolidated Cases considered evidence of improper registration and decided that SnoWizard held a valid trademark for WHITE CHOCOLATE & CHIPS. *S. Snow*, No. 06-9170 (E.D. La. Aug. 1, 2013) (Verdict Form), ECF No.709-1 at 15.

*Count 4*: The Second Amended Complaint alleges fraudulent registration of the CAJUN RED HOT trademark. The jury in the Consolidated Cases considered evidence of improper registration and decided that SnoWizard held a valid trademark for CAJUN RED HOT. *S. Snow*, No. 06-9170 (E.D. La. Aug. 1, 2013) (Verdict Form), ECF No.709-1 at 14.

*Count 5*: The Second Amended complaint alleges SnoWizard's actions over the course of a decade violated the Lanham Act. 15 U.S.C. § 1125(a). The facts that are the basis of this claim are repeated from the RICO claims in the Consolidated Cases. Therefore, like the RICO-obstruction of justice claim (Count 1), this claim is precluded.[12]

*Count 6*: The Second Amended Complaint alleges a Louisiana Antitrust law claim duplicative of the related Clayton and Sherman Antitrust claims (Count 2). The state law claims are based on the same facts from which the precluded federal claims are drawn and that were the subject of Louisiana antitrust claims in the Consolidated Cases. They, too, are precluded by the

---

prejudice is a final judgment on the merits."); *In re Baudoin*, 981 F.2d 736, 742 (5th Cir. 1993) (giving preclusive effect to orders of bankruptcy court as qualifying final judgments).

[12] *Lexmark Int'l v. Static Control Components*, 134 S. Ct. 1377 (2014), does not help the plaintiffs, despite their assertions to the contrary. *Lexmark* narrowed the class of plaintiffs able to establish standing under the Lanham Act to those within the "zone of interests protected by the law." *Id.* at 1388. It gave no indication that a single pattern of facts could bear consecutive suits.

jury's decision in the Consolidated Cases. *S. Snow*, No. 06-9170 (Aug. 1, 2013) (Verdict Form), ECF No.709-1 at 7–8.

*Count 7*: The Second Amended Complaint alleges violations of the Louisiana Unfair Competition & Trade Practices Act. This claim is based on the same facts used for unfair competition practices in the prior litigation and is precluded. *Id.*

*Count 8*: The Second Amended Complaint alleges violations of Louisiana Civil Code art. 2315. This claim is based on the same facts that were litigated in the Consolidated Cases (that are the basis of the obstruction of justice and abusive litigation claims listed above). As the obstruction of justice claim is precluded, so too is this claim.

Southern Snow argues that it has introduced new facts in the Second Amended Complaint because it argues that SnoWizard made misrepresentations to the PTO and the federal district court during the Consolidated Cases that constituted obstruction of justice and other unfair trade practices. These facts took place *before* the actual trial in the Consolidated Cases and the alleged misrepresentations all related to issues, like the validity of the CAJUN RED HOT and WHITE CHOCOLATE & CHIPS trademarks, that were decided by the jury in the Consolidated Cases. Plaintiffs are only allowed one bite at the sno-ball. If SnoWizard made material misrepresentations about the validity of various trademarks and patents, Southern Snow should have introduced those claims during its litigation over the validity of those trademarks and patents during the trial.

### B. *RICO Failure to State a Claim*

After concluding that Southern Snow's civil-RICO claims (count 1) were barred by *res judicata*, the district court concluded in the alternative that Southern Snow did not satisfy the federal pleading standard for that claim. We

agree. Even assuming, *arguendo*, that the obstruction of justice RICO claims are not precluded by the judgment in the Consolidated Cases, they would fail because they do not state a claim on which relief can be granted.

The Racketeer Influenced and Corrupt Organizations Act makes it illegal for an individual to use the proceeds of racketeering activity in a business that engages in interstate commerce. 18 U.S.C. § 1962. To establish a civil-RICO claim, a plaintiff must establish three common elements: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (quoting *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)). "A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity." *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009). The predicate criminal acts can be violations of either state or federal law. *Id.*

The RICO lists a number of crimes that can constitute racketeering activity, including obstruction of justice (as defined by 18 U.S.C. § 1503)[13] and

---

[13] Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b).
18 U.S.C. § 1503.

witness tampering (as defined by 18 U.S.C. § 1512).[14] 18 U.S.C. § 1961.[15] Southern Snow has not pleaded sufficient facts to establish either alleged criminal act.

The criminal statutes require not merely delay but corrupt activity by the bad actor. Southern Snow points to no cases supporting its contention that bad faith litigation tactics alone constitute witness tampering. By contrast, the defendants point to several cases in other circuits holding that litigation activity cannot be the predicate for a civil-RICO claim. *See Feld Entm't Inc. v. Am. Soc. for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 318 (D.D.C. 2012); *Daddona v. Gaudio*, 156 F. Supp. 2d 153, 162 (D. Conn. 2000); *Luther v. Am. Nat'l Bank of Minn.*, 2012 WL 5471123, at *6 (D. Minn. Oct. 11, 2012). These cases all concluded that various actions in litigation could be the substance of malicious prosecution torts but could not sustain RICO liability. *See Luther*, 2012 WL 5471123, at *6 (collecting cases). Only in *Feld* did the court allow litigation activity to sustain a civil-RICO action, but in that case

---

[14] Penalizes one who:
> Corruptly (1) alters, destroys, mutilates, or conceals a record, document or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or (2) otherwise obstructs, influences, or impedes any official proceeding or attempts to do so.

18 U.S.C. § 1512(c).

[15] Although this circuit has never specifically addressed the point, SnoWizard argues that the *Noerr-Pennington* doctrine bars civil-RICO liability based purely on statements made to federal courts. *See Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 859–60 (5th Cir. 2000) (applying *Noerr–Pennington* to § 1983 claim after noting that the Supreme Court has only used it to bar antitrust claims); *ABA Section of Antitrust Law,* 2 *Antitrust Law Developments* 1284–1302 (7th ed. 2012). Southern Snow argues that the defendants' actions in the prior proceeding would qualify for the sham litigation exception to *Noerr-Pennington*, *see Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 56 (1993), but SnoWizard's actions hardly qualify as sham litigation considering that the jury found in their favor on several of their counterclaims and they were successful at summary judgment on several others. Because Southern Snow does not plead the requisite criminal activity to support a civil-RICO claim, we need not address whether criminal activity based solely on litigation activity should be barred from civil-RICO liability as an extension of the *Noerr-Pennington* doctrine.

the litigation activity included bribery of parties and witnesses. *Feld*, 873 F. Supp. 2d at 307.

Although we have never directly addressed whether bad faith litigation absent corruption can sustain civil-RICO claims, our decision in *St. Germain v. Howard* suggests that it cannot. 556 F.3d 261 (5th Cir. 2009). The plaintiff in that case alleged wire fraud and mail fraud as the predicate acts for civil-RICO liability but conceded that the bad acts of the defendant attorneys did not satisfy the criminal standards for mail or wire fraud and rose only to the level of violations of counsels' professional responsibility obligations. *Id.* at 263. We dismissed the claims, concluding that "[b]ecause Appellants have not alleged the requisite predicate *criminal* acts under RICO, they have not met the pleading standard of Rule 12(b)(6)." *Id.* The clear implication of *St. Germain* is that civil-RICO liability should not exist unless the pleadings allege actual criminal activity. In the absence of corruption, we agree with our sister circuit that "prosecuting litigation activities as federal crimes would undermine the policies of access and finality that animate our legal system. Moreover, allowing such charges would arguably turn many state-law actions for malicious prosecutions into federal RICO actions." *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002).

Southern Snow does not allege any actual criminal activity as a predicate act. At most, Southern Snow alleges that the defendants "perpetrated a series of obstructive acts in different civil actions in the District Court, in PTO Trademark Trial and Appeal Board (TTAB) proceedings, and in PTO TTAB opposition and cancellation proceedings." But the obstructive acts Southern Snow alleges are not criminal conduct. Therefore, they cannot act as a predicate offense for a civil-RICO claim.

No. 15-30393

## C. *Conspiracy Claims Against Morris and Tolar*

Southern Snow alleges that Morris and Tolar conspired with SnoWizard in all of the allegedly illegal activity that is precluded by the resolution of the Consolidated Cases. Morris and Tolar are named as defendants in Count 1 (civil-RICO premised on obstruction of justice), Count 11 (La. Civ. Code art. 2324 conspiracy premised on fraud and obstruction), Count 12 (malicious prosecution in docket No. 10-4275), and Count 13 (conspiracy premised on malicious prosecution in docket No. 11-0515). Because Morris and Tolar were not parties in the Consolidated Cases, they are not protected by *res judicata*.[16] Nevertheless, Southern Snow's conspiracy claims against Morris and Tolar fail because they do not satisfy the federal pleading standards.

Southern Snow alleges that Morris and Tolar conspired with SnoWizard in their obstruction of justice and therefore have civil-RICO liability. This claim fails just as the civil-RICO claims against SnoWizard fail because Southern Snow has not pleaded any predicate criminal activity. Furthermore,

---

[16] In *Taylor v. Sturgell*, the Supreme Court announced a small group of exceptions to the general rule that non-parties cannot be bound to the outcome of a prior lawsuit by claim preclusion. The exceptions are:

> First, a person who agrees to be bound . . . . Second . . . a variety of pre-existing substantive legal relationships between the person to be bound and a party to the judgment. Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor . . . . Third . . . in certain limited circumstances a nonparty may be bound by a judgment because she was adequately represented by someone with the same interest who was a party to the suit . . . . Fourth, a nonparty may be bound by a judgment if she assumed control over the litigation in which that judgment was rendered . . . . Fifth, a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy . . . . Sixth, in certain circumstances a special statutory scheme may expressly foreclose successive litigation by nonlitigants.

*Taylor*, 553 U.S. 880, 893–95 (2008) (citations and quotation marks omitted). Only the third exception plausibly applies but, as the district court observed, Morris and Tolar may have asserted different arguments and defenses in the first litigation had they been included as defendants, and they have separate ethical obligations to the Court that do not exist for SnoWizard. As a result, non-party claim preclusion does not bar Southern Snow's claims against them.

Southern Snow has not shown any proof of agreement between Morris and Tolar to advance the criminal enterprise. In this circuit, "a RICO civil complaint, at the very least, must allege specifically [an agreement to commit predicate] acts." *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995). The Second Amended Complaint contains only the statement that "Morris and Tolar, both attorneys, had actual knowledge, or should have known under their duties to inquire, that the complained-of conduct was unlawful, and therefore acted with intent to conspire in Sciortino's and SnoWizard's deceptions." Civil-RICO conspiracy, however, cannot be premised on negligence. It requires an actual agreement between conspirators—they must specifically intend the illegal conduct. *See Crowe*, 43 F.3d at 206; *Abraham*, 480 F.3d at 357. With no allegation of such agreement here, the civil-RICO conspiracy claims against Morris and Tolar fail.

The Louisiana state law conspiracy claims also fail. Louisiana law does not create a self-standing tort of conspiracy; "rather the actionable element of article 2324 is the intentional tort that the conspirators agreed to commit and committed, in whole or in part, causing plaintiff's injury." *Hardy v. Easterling*, 113 So.3d 1178, 1184 (La. Ct. App. 2013). While a conspiracy can be proven by circumstantial evidence, *id.*, a plaintiff "must be able to prove that an agreement existed between the accused defendants to commit the illegal or tortious act which resulted in the plaintiff's injury," *Kiva Constr. & Eng'g, Inc. v. Int'l Fidelity Ins. Co.*, 749 F. Supp. 753, 756 (W.D. La. 1990). In other words, the plaintiff "is required to establish a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing." *Thomas v. N. 40 Land Dev.*, 894 So.2d 1160, 1174 (La. Ct. App. 2005). Southern Snow has not alleged facts demonstrating such an agreement. The conspiracy claims against Morris and Tolar therefore fail.

No. 15-30393

## D. *Malicious Prosecution*

Counts 9 and 12 of Southern Snow's Second Amended Complaint bring claims for malicious prosecution. These claims rely exclusively on SnoWizard's conduct in docket No. 10-4275, which ended when the parties agreed to dismiss Southern Snow's claims without prejudice, allowing Southern Snow to replead the claims in the Consolidated Cases. Southern Snow's Second Amended Complaint in this case, however, makes no claims based on the Consolidated Cases; it looks only to docket No. 10-4275.[17]

A Louisiana cause of action for malicious prosecution has four elements:

> (1) the commencement or continuation of an original criminal or civil proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff.

*Deville v. Marcantel*, 567 F.3d 156, 173 (5th Cir. 2009).

Southern Snow has not made out a claim for malicious prosecution in No. 10-4275 because that case did not result in a bona fide termination in favor of Southern Snow. Under Louisiana Law, "a judgment is the determination of the rights of the parties in an action . . . [and] a judgment that determines the merits in whole or in part is a final judgment." La. Code Civ. P. art. 1841. Louisiana courts interpret the bona fide termination requirement as declaring that "a merely procedural victory that does not relate to the merits of the suit is not a bona fide termination for the purpose of a subsequent action for malicious prosecution." *Milling, Benson, Woodward, Hillyer, Pierson, & Miller*

---

[17] Counts 10 and 13 bring claims of malicious prosecution based on docket No. 11-0515, which ended in a settlement. The district court dismissed these claims because settled cases "cannot serve as the basis for a malicious prosecution" claim. *Ulmer v. Frisard*, 945 So.2d 85, 88 (La. Ct. App. 2006). Southern Snow makes no argument on appeal in defense of counts 10 or 13. As a result, it has abandoned those claims. *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 702 n.6 (5th Cir. 2014).

No. 15-30393

*LLP v. Am. Marine Holding Co.*, 729 So.2d 139, 142 (La. Ct. App. 1999); *accord Terro v. Chamblee*, 663 So.2d 75, 77–78 (La. Ct. App. 1995). Docket No. 10-4275, the case in which the conduct underlying the only live claim for malicious prosecution occurred, ended with an agreement between the parties to dismiss their claims without prejudice. Our precedent makes clear that dismissal "'[w]ithout prejudice' indicates that the suit is dismissed without a decision on the merits and is not conclusive of the rights of the parties." *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 194 (5th Cir. 2011) (quoting *Poulos v. Reda*, 520 N.E.2d 816, 822 (Ill. App. Ct. 1987)). Without a bona fide favorable termination, Southern Snow cannot support a claim for malicious prosecution.

The fact that the claims dismissed in No. 10-4275 were later added to an amended complaint in the Consolidated Cases does not allow Southern Snow to sustain a malicious prosecution claim based solely on a lawsuit in which it did not obtain a bona fide favorable termination. Because Southern Snow has no live claim in the present case alleging that SnoWizard committed malicious prosecution in the Consolidated Cases, the Federal Circuit ruling in Southern Snow's favor in the Consolidated Cases is irrelevant. Because Southern Snow's only live malicious prosecution claim is tied to case No. 10-4275 and because Southern Snow did not obtain a favorable resolution on the merits in that case, its malicious prosecution claim fails.

### III.

We now turn to SnoWizard's cross-appeal of the two district court orders denying sanctions against Southern Snow. We review Rule 11 orders for abuse of discretion. *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384 (1990).

> Appellate review is deferential because "the imposition or denial of sanctions of necessity involves a fact-intensive inquiry into the circumstances surrounding the activity alleged to be a violation of Rule 11. The perspective of a district court is singular. The trial judge is in the best position to review the factual circumstances

18

No. 15-30393

and render an informed judgment as he is intimately involved with the case, the litigants, and the attorneys on a daily basis."

*Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 566 (5th Cir. 2006) (quoting *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 873 (5th Cir. 1988) (en banc)).

Rule 11 requires the attorney filing litigation documents to certify that the documents:

> (1) [are] not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation [and] (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Fed. R. Civ. P. 11(b). Subsections (b)(1) and (b)(2) provide independent grounds for sanctions, either because a filing is made for an improper purpose regardless of its merits or because a filing, even made in good faith, is legally indefensible. *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802 (5th Cir. 2003) (en banc). However, "a trial court should not impose Rule 11 sanctions for advocacy of a plausible legal theory, particularly where . . . the law is arguably unclear." *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 793 (5th Cir. 1993). An attorney's conduct is judged under each standard with an objective, not a subjective, standard of reasonableness. *Whitehead*, 332 F.3d at 802. "Reasonableness is reviewed according to the 'snapshot' rule, focusing upon the instant the attorney affixes his signature to the document." *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992).

SnoWizard filed twice for Rule 11 sanctions in the present suit. The second motion for sanctions is based on the First Amended Complaint in this lawsuit. The third motion for sanctions is based on the Second Amended Complaint in this suit. Both motions assert that Southern Snow's civil-RICO claims were not warranted by existing law or by any nonfrivolous argument for extending existing law. SnoWizard also argues that the complaints were

filed for an improper purpose: to harass SnoWizard. Because the First and Second Amended Complaints echo one another's claims, so too do the two sanctions motions and the grounds for the district court's denials. The only substantive difference is that, in the First Amended Complaint, Southern Snow pleaded mail and wire fraud, obstruction of justice, and extortion as the predicate criminal acts, while in the Second Amended Complaint it pleaded obstruction of justice and witness tampering.

SnoWizard argues that Southern Snow's inability to plead facts satisfying the pleading requirements for the various predicate criminal acts renders Southern Snow's civil-RICO claims legally irredeemable and sanctionable. The district court disagreed, noting that the cases SnoWizard cited to dismiss Southern Snow's RICO claims are from our sister circuits. The district court credited Southern Snow with a "colorable argument" that its claims could be distinguished from *St. Germain* because, unlike the *St. Germain* plaintiffs, Southern Snow did not concede that SnoWizard had only violated professional ethical obligations. The district court further noted that the:

> Plaintiffs' allegations of engaging in 'sham' litigation and making material misstatements in court and to government officials are extremely serious and could, in certain contexts constitute crimes. . . . Therefore it cannot be said that Plaintiffs' RICO claims were so misguided as to support sanctions, even if ultimately the alleged acts do not support a violation of RICO.

*Snow Ingredients v. SnoWizard, Inc.*, No. 12-1412, at \*19 (E.D. La. Mar. 8, 2014) (order denying sanctions).

The district court was troubled by the potential seriousness of Southern Snow's allegations. Although Southern Snow's RICO claims ultimately fail, its claims are not so obviously foreclosed by precedent as to make them legally indefensible. The filings do not indicate that Southern Snow neglected its "duty

of reasonable inquiry into the relevant law." *CJC Holdings*, 989 F.2d at 793. The district court was correct to be cautious regarding the imposition of sanctions: "misapplication of Rule 11 can chill counsel's 'enthusiasm and stifle the creativity of litigants in pursing novel factual or legal theories,' contrary to the intent of its framers." *Id.* at 794 (quoting *Thomas*, 836 F.2d at 885). It hardly would be in keeping with *St. Germain*, where this court refused to impose Rule 38 sanctions on a party that advanced a civil-RICO claim without even attempting to plead a predicate criminal offense, for this court to conclude the district court abused its discretion when it declined to sanction an attorney who attempted to plead a predicate criminal offense, albeit unsuccessfully.[18]

## IV.

The parties could have shaved down the overwhelming costs in time, expense, and scarce judicial resources that this litigation has consumed if they could have abandoned their unrelenting desire to crush the opposition. Instead, Southern Snow returned to court attempting to argue that the fact pattern litigated in the Consolidated Cases could support new legal claims

---

[18] SnoWizard urges that counsel should be treated as a repeat offender because counsel for Southern Snow was plaintiffs' counsel in *St. Germain* and therefore should know that where the plaintiffs "have not alleged the requisite predicate *criminal* acts under RICO, they have not met the pleading standard of Rule 12(b)(6)." *St. Germain*, 556 F.3d at 263 (emphasis added). SnoWizard further observes that, in addition to losing his appeal in *St. Germain*, counsel narrowly avoided Rule 11 sanctions. We observed that *St. Germain* was "a close case [arguing for sanctions] given that [counsel and his client] clearly have not presented a cognizable civil RICO claim." *Id.* at 264. In his next suit against the same defendants, counsel was not able to escape sanctions. *Howard v. St. Germain*, 599 F.3d 455, 458 (5th Cir. 2010) (sanctioning counsel for filing a frivolous appeal advancing "a ridiculous, farfetched notion"). Although we find counsel's pattern of behavior troubling, we are not convinced that the district court abused its discretion by denying sanctions.

SnoWizard also notes that counsel filed another suit against SnoWizard in the PTO's Trademark Trial and Appeal Board in February 2015 once again challenging the WHITE CHOCOLATE & CHIPS and CAJUN RED HOT trademarks on behalf of Snow Ball's Chance, Ltd., a New Orleans company that SnoWizard asserts is merely a front for Southern Snow. Whatever offenses counsel and Southern Snow may have committed before the PTO, however, are the proper subject of that agency's sanctions process, not the present suit.

under different theories. But claims must be unique. Because the claims against SnoWizard are precluded, and because the claims against Morris and Tolar fail to satisfy the requirements for conspiracy, obstruction of justice, or malicious prosecution, we AFFIRM the dismissal of all the claims. Given that Southern Snow advanced arguments that, although creative, were not "ridiculous," *Howard*, 599 F.3d at 458, we AFFIRM the district court's denials of sanctions.