## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-50661

United States Court of Appeals
Fifth Circuit

**FILED**
April 6, 2020

Lyle W. Cayce
Clerk

LUIS TEJERO,

>        Plaintiff – Appellant,

MICHAEL JACOB WOOD; CELETHA CHATMAN; ROBERT ALAN ZIMMER, JR.; TYLER HICKLE,

>        Appellants,

v.

PORTFOLIO RECOVERY ASSOCIATES, L.L.C.; WESTERN SURETY COMPANY,

>        Defendants – Appellees.

Appeal from the United States District Court
for the Western District of Texas

Before ELROD, WILLETT, and OLDHAM, Circuit Judges.

ANDREW S. OLDHAM, Circuit Judge:

Luis Tejero sued Portfolio Recovery Associates, L.L.C. under the federal Fair Debt Collection Practices Act and a parallel state law. The parties eventually reached a settlement that forgave Tejero's debt and awarded him $1,000 in damages. As favorable as that result was to the plaintiff, the district court determined that Tejero's attorneys did not settle his lawsuit quickly enough. So the district court sanctioned them. That was an abuse of discretion,

No. 18-50661

so we reverse it. But we disagree with Tejero that the district court is biased against him, so we affirm the denial of his recusal motion.

## I.

## A.

Portfolio Recovery attempted to recover from Tejero a credit-card debt of approximately $2,100. As a debt collector in Texas, Portfolio Recovery was obligated to comply with the federal Fair Debt Collection Practices Act ("FDCPA") and the Texas Debt Collection Act ("Texas Act"). The former makes it unlawful for a debt collector to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. That prohibition includes, among other things, communicating "credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." *Id.* § 1692e(8). The Texas Act contains a parallel prohibition. *See* TEX. FIN. CODE §§ 392.202(a), 392.301(a)(3).

Tejero says he disputed his credit-card debt in January 2016. Through his attorneys, Tejero sent the following fax to Portfolio Recovery:

> Dear Sir or Madam:
>
> I am writing to you regarding the account referenced above. I refuse to pay this debt.
>
> My monthly expenses exceed my monthly income; as such there is no reason for you to continue contacting me, and the amount you are reporting is not accurate either. If my circumstances should change I will be in touch.
>
> Sincerely,
>
> Luis Tejero

Despite this letter, Portfolio Recovery subsequently informed a consumer agency of the debt without noting that Tejero disputed it.

No. 18-50661

In June 2016, Tejero sued Portfolio Recovery for violating the FDCPA and the Texas Act. In September of that year, the district court ordered the parties to exchange settlement offers by October 19, 2016. Portfolio Recovery offered to settle the case for $1,101, plus reasonable attorney's fees and costs.[1] Tejero's lawyers neither submitted a written offer nor responded to Portfolio Recovery's offer. Later, during discovery, Tejero acknowledged that $1,000 "would make [him] whole" and conclude the case.

Once discovery ended, the parties cross-moved for summary judgment. The district court denied Tejero's motion. The district court identified a triable issue regarding whether Tejero validly disputed his credit-card debt in his January 2016 fax to Portfolio Recovery.

On Portfolio Recovery's motion, the district court found no competent evidence to support Tejero's claims for actual damages. Because actual damages are required to state a claim under the Texas Act, the court dismissed that claim. But the court denied the motion with respect to the FDCPA claim. The district court again identified a triable issue regarding whether Tejero "actually disputed the [d]ebt" in the January 2016 letter.

Following these rulings, the parties settled and filed a notice of settlement with the court. Portfolio Recovery agreed to pay Tejero $1,000 and to forgive the underlying debt. The parties left the district court to decide the issue of attorney's fees and costs.

---

[1] "There are at least eleven competing terms we could use instead of '[attorney's fees].'" *Gahagan v. U.S. Citizenship & Immigration Servs.*, 911 F.3d 298, 300 n.1 (5th Cir. 2018), *cert. denied*, 140 S. Ct. 449 (2019) (mem.). In keeping with the statute we're interpreting, we'll use the terms "attorney's fee" or "attorney's fees." *See* 15 U.S.C. § 1692k(a)(3) (using both "attorney's fee" and "attorney's fees").

No. 18-50661

B.

Tejero moved for attorney's fees and costs, seeking a total of $14,731.80. Portfolio Recovery moved to sanction Tejero's lawyers under 28 U.S.C. § 1927 and 15 U.S.C. § 1692k(a)(3), and it requested $13,950.38 in attorney's fees and costs.

Before ruling, Judge Sparks wrote to the disciplinary committee for the Western District of Texas. He listed the FDCPA cases in which Tejero's attorneys had participated. And he accused the lawyers of various ethics violations, including their purported participation in "a scheme to force settlements from debt collectors by abusing the FDCPA."

Then, in April 2018, the district court declined to award Tejero his attorney's fees and costs. Instead, it sanctioned Tejero's attorneys (the "Attorney-Appellants") under 15 U.S.C. § 1692k(a)(3) and Federal Rule of Civil Procedure 11(c), and ordered that they pay Portfolio Recovery's attorney's fees and costs. The court reasoned that Tejero's attorneys acted in bad faith when they: (1) failed to comply with the September 2016 settlement-offer order; (2) continued to litigate the case even after receiving an offer that would make Tejero whole; and (3) drafted the January 2016 debt letter in a manner that would cause the debt collector not to realize that the debt was disputed, so that counsel could engage in a "scheme" to "force settlements from debt collectors by abusing the FDCPA."

C.

Following the sanctions order, Tejero moved to recuse Judge Sparks under 28 U.S.C. §§ 144 and 455. Tejero argued that the judge had "personal knowledge of disputed evidentiary facts" (a disqualifying factor under §§ 144 and 455(b)(1)) because the judge's disciplinary referral made mention of FDCPA lawsuits in which Tejero's attorneys had relied on an identically worded dispute letter. Tejero and his attorneys also said the district court

No. 18-50661

evidenced partiality requiring recusal under § 455(a) by accusing Tejero's counsel of orchestrating a "scheme" to "abuse" the FDCPA.

In a May 2018 order, Judge Ezra (to whom the recusal issue had been assigned) denied Tejero's motion. He found that Judge Sparks was not in possession of extrajudicial knowledge because the disciplinary letter and the sanctions order were both based on information gathered in Judge Sparks's judicial capacity. And, Judge Ezra concluded, Judge Sparks's referrals and rulings did not show sufficient antagonism for a reasonable person to harbor doubts about the judge's impartiality. Tejero and his lawyers timely appealed.

## II.

We first consider the district court's sanctions orders. Our review is for abuse of discretion. *See LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 535 (5th Cir. 2016) (standard of review for § 1692k(a)(3) attorney's fee awards); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 527 (5th Cir. 2016) (standard of review for Rule 11 sanctions). We find it.

## A.

We start with Rule 11, and the district court's procedural misstep: A court may not award attorney's fees *sua sponte* under Rule 11, as it did here. There must first be a Rule 11 motion, or an order to show cause under Rule 11(c)(3). *Brunig v. Clark*, 560 F.3d 292, 298 (5th Cir. 2009). If preserved, this procedural error would have justified reversal. *See Marlin v. Moody Nat'l Bank, N.A.*, 533 F.3d 374, 378–79 (5th Cir. 2008). But Tejero's attorneys raised this point for the first time in their reply brief on appeal, and therefore forfeited the argument. *See United States ex rel. Drummond v. BestCare Lab. Servs., L.L.C.*, 950 F.3d 277, 284 (5th Cir. 2020). We must instead reach the merits.

Rule 11 requires, in relevant part, that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name." FED. R. CIV. P. 11(a). The signature required by Rule 11(a)

"certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the paper is not sanctionable under Rule 11(b). It follows from the text of Rule 11 that it applies *only* where a person files a paper. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (Rule 11 "deter[s] baseless *filings* in district court" (emphasis added)); *In re Case*, 937 F.2d 1014, 1022 (5th Cir. 1991) (Rule 11 "ties sanctions to an attorney's signature on a particular pleading or document which is filed with the court"). Rule 11 does not extend to "abusive tactics in litigation in respects other than the signing of papers." *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 875 (5th Cir. 1988) (en banc); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 41 (1991). That's why a district court should "evaluate[] an attorney's conduct at the time a pleading, motion, or other paper is signed." *Thomas*, 836 F.2d at 874 (quotation omitted).

The district court proffered three reasons for sanctioning the Attorney-Appellants under Rule 11: (1) they failed to make or respond to a settlement offer, in violation of a scheduling order; (2) they continued to litigate even after Tejero indicated that the amount offered by Portfolio Recovery would have made him whole; and (3) the debt letter to Portfolio Recovery was part of a fraudulent scheme to abuse the FDCPA. None is tied to a filing. All are meritless.

1.

The failure to engage in settlement discussions relates to an attorney's litigation tactics, rather than a filing subject to Rule 11. We have previously held that the violation of a discovery order did not justify Rule 11 sanctions because the attorney "had signed no objectionable court papers." *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1410 (5th Cir. 1993). The same rationale applies to an attorney's violation of an order to exchange settlement offers.

No. 18-50661

Additionally, the Fifth Circuit and a number of our sister circuits have held that courts do not have the power to compel parties to make settlement offers, and that the failure to make an offer is not sanctionable. *See Dawson v. United States*, 68 F.3d 886, 897 (5th Cir. 1995) (collecting cases from other circuits). Despite this holding, it is our understanding that it has become common within the Western District of Texas for judges to require parties to exchange settlement offers. *See* Oral Argument at 13:13–28. We take this opportunity to reiterate the rule that has (or at least should have) applied in our Circuit for the last twenty-five years: "[I]f a party is forced to make a settlement offer because of the threat of sanctions, and the offer is accepted, a settlement has been achieved through coercion. Such a result cannot be tolerated." *Dawson*, 68 F.3d at 897.

Here, because the district court lacked the power to order Tejero to make a settlement offer, it was improper to sanction his attorneys for their failure to abide by that order.

2.

The district court's second reason for leveling sanctions relies on Tejero's decision to continue litigating after receiving a $1,101 settlement offer. Again, the decision to reject a settlement offer is not a court filing subject to Rule 11(b). Litigation conduct can trigger sanctions under other statutes. *See, e.g.*, 28 U.S.C. § 1927 (providing for counsel's liability for "multipl[ying] the proceedings in any case unreasonably and vexatiously"); *Thomas*, 836 F.2d at 875. But the district court explicitly ruled out the award of § 1927 sanctions in its April 2018 order.

Perhaps the district court meant to say that the Attorney-Appellants' decision to file a summary judgment motion after discovery and settlement negotiations violated Rule 11. But the district court did not find that the motion was frivolous, which would have been a violation of Rule 11(b)(2). And

No. 18-50661

it did not determine that the attorneys knew or ought to have known that factual contentions or denials in the motion were unsupported by the evidence, in violation of Rule 11(b)(3) and (4). To the contrary, the district court *denied* Portfolio Recovery's cross-motion for summary judgment on the FDCPA claim—which indicates Tejero's position was far from frivolous. In fact, it was so substantial that the district court thought it warranted a trial.

That leaves just one other basis for Rule 11 sanctions: the prohibition against filing motions that are "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." FED. R. CIV. P. 11(b)(1). It's possible that the district court considered the summary judgment motion "improper" because Tejero filed that motion rather than accept the $1,101 settlement offer from Portfolio Recovery, thereby driving up the parties' costs.

If that was the reasoning of the district court, it was clearly wrong. Portfolio Recovery made a Rule 68 offer for $1,101 in October 2016. The deposition at which Tejero indicated that he'd accept $1,000 took place in March 2017. By that time, the $1,101 offer had been withdrawn for over four months. *See* FED R. CIV. P. 68(a)–(b) (providing that an opposing party has fourteen days to accept an offer of judgment; otherwise, the offer is "considered withdrawn"). There is no indication that another offer was on the table when Tejero signed and filed his motion for summary judgment. And that's the only relevant time period for the Rule 11 inquiry. *See Thomas*, 836 F.2d at 874.

Nor is it clear that $1,101 would have made Tejero whole. At the time Portfolio Recovery made the offer, it claimed Tejero's debt was $2,100. So the Rule 68 offer would have covered just over one half of the purported debt. Moreover, at the time the offer was made—indeed, also at the time the summary judgment motions were filed—Tejero still had a live claim under the Texas Act. And that latter claim carried the potential for exemplary damages.

8

No. 18-50661

It's of no moment that Tejero later lost the Texas Act claim. All that matters is that he had a non-frivolous basis to bring it. Nor does it matter that Tejero himself did not understand all of this when answering questions in his deposition. All that matters is that his attorneys did. Under those circumstances, it was entirely reasonable (if risky) for Tejero's attorneys to roll the dice with a motion for summary judgment. *See Nat'l Ass'n of Gov't Emps., Inc. v. Nat'l Fed'n of Fed. Emps.*, 844 F.2d 216, 223 (5th Cir. 1988) ("Failure to compromise a case, . . . even pursuant to terms suggested by the court, does not constitute grounds for imposing sanctions . . . ."). In all events, we struggle to think of any instance when the decision to file a summary judgment motion rather than settle would constitute sanctionable conduct.

3.

The district court's final ground for imposing Rule 11 sanctions was the debt-dispute letter. The court considered the letter intentionally unclear—a "bad faith" attempt to use "ambiguously worded" language to "expose[] debt collectors to [FDCPA] liability." The letter also is not a filing or other paper subject to Rule 11. But Tejero incorporated it into his complaint. So at last we're talking about a filing to which Rule 11 *could* apply. Even so, there is no evidence that Tejero filed his complaint in "bad faith."

The phrase "bad faith" does not appear in the Rule. And the district court did not explain precisely which part of Rule 11 it considered violated. The court might have thought that the factual contentions in the letter—the existence of a dispute over the debt—did not "have evidentiary support." FED. R. CIV. P. 11(b)(3). But the district court found elsewhere that an issue of fact "exist[ed] on whether Plaintiff actually disputed the Debt." So lack of evidentiary foundation cannot be the problem here.

A claim that survives summary judgment likewise cannot be frivolous. *See* FED. R. CIV. P. 11(b)(2). The district court itself acknowledged that the

dispute letter "expose[d] debt collectors to liability." If a claim has merit, it cannot be frivolous. *See Nat'l Ass'n of Gov't Emps.*, 844 F.2d at 222–23; *cf. Dawson*, 68 F.3d at 896 ("[A] district court's disagreement with the merits of a position . . . cannot serve as the basis for sanctions.").

It's also possible the district court thought the claims were brought for an improper purpose—to drum up business for the lawyers and extract attorney's fees from unsuspecting debt collectors. But "[w]hen a complaint is well grounded in fact and warranted by existing law, only under unusual circumstances should the filing of papers constitute sanctionable conduct." *FDIC v. Calhoun*, 34 F.3d 1291, 1300 (5th Cir. 1994) (quotation omitted). And the inquiry into whether an improper purpose or unusual circumstances existed should be based on the objective reasonableness of the filing, not subjective suspicion. *Nat'l Ass'n of Gov't Emps.*, 844 F.2d at 224 ("[P]urely subjective elements should not be reintroduced into the determination concerning 'improper purpose.'"); *see also Snow Ingredients*, 833 F.3d at 528 ("An attorney's conduct is judged under each standard with an objective, not a subjective, standard of reasonableness.").

Here, the district court found the Attorney-Appellants "intentionally" drafted an unclear dispute letter. The relevant part of the letter reads: "My monthly expenses exceed my monthly income . . . and the amount you are reporting is not accurate either." Aside from invoking the word "dispute," we struggle to see how a debtor could dispute a debt more clearly than by writing, "the amount you are reporting is not accurate."

We are not alone on this issue. The Seventh Circuit, and every district court within it to have considered the matter, has concluded that the phrase "the amount reported is not accurate" unambiguously and clearly "dispute[s]" a debt—"[t]here is simply no other way to interpret this language." *Evans v. Portfolio Recovery Assocs. LLC*, 889 F.3d 337, 346 (7th Cir. 2018); *see also ibid.*

No. 18-50661

(listing the district courts that "arrived at the same conclusion"). Another judge within the Western District of Texas agreed, seven months before Judge Sparks sanctioned Tejero's attorneys. *See Jones v. Portfolio Recovery Assocs., LLC*, No. 1:16-cv-572-RP, 2017 WL 7052288, at *4 (W.D. Tex. Aug. 16, 2017).

Granted, the Rule 11 inquiry focuses on the attorney's purpose at the time of the filing. *Snow Ingredients*, 833 F.3d at 528 ("Reasonableness is reviewed according to the 'snapshot' rule, focusing upon the instant the attorney affixes his signature to the document." (quotation omitted)). At the time the Tejero complaint was filed, none of these cases had been decided. But they demonstrate that other courts—and hence other readers, like debt collectors—understand the letter to dispute a debt. And, if anything, the fact no court had found the letter insufficient to dispute a debt should have made the district court here especially reluctant to condemn it.

The district court simply had no basis to ignore the language of the letter and instead infer subjective bad faith based on its view of the attorneys' "inten[t]." Even with the high degree of deference afforded a district court's factual findings, that's reversible error. *Cf. id.* at 529 ("[M]isapplication of Rule 11 can chill counsel's enthusiasm and stifle the creativity of litigants in purs[u]ing novel factual or legal theories, contrary to the intent of its framers." (quotation omitted)).

## B.

We now turn to the district court's fee award to Portfolio Recovery under 15 U.S.C. § 1692k(a)(3). That subsection permits a court to "award to the defendant attorney's fees" "[o]n a finding . . . that an action under this section was brought in bad faith and for the purpose of harassment." 15 U.S.C. § 1692k(a)(3). We have already expressed disagreement with the court's finding of bad faith. That's a sufficient reason to reverse the § 1692k(a)(3) fee

11

award. But there's another problem: The district court ordered Tejero's *lawyers* to pay it. Section 1692k(a)(3) does not stretch that far.

The American Rule against awarding costs and fees to the prevailing party was well-established by 1796, when the Supreme Court described it as the "general practice of the United States." *Arcambel v. Wiseman*, 3 U.S. (3 Dall.) 306, 306 (1796). Because of the common-law origins of the rule, statutes that alter it "are to be read with a presumption favoring the retention of long-established and familiar legal principles," *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015) (quotation omitted). That's why we "analyze[] a statute's specificity and explicitness in the context of a particular fee request. That a statute is sufficiently specific and explicit to authorize one type of fee award does not make it sufficiently specific and explicit to authorize another type of fee award." *Gahagan v. U.S. Citizenship & Immigration Servs.*, 911 F.3d 298, 300 (5th Cir. 2018), *cert. denied*, 140 S. Ct. 449 (2019) (mem.).

Accordingly, when a statute awards fees to one party, but does not identify from whom they may be collected, we're reluctant to allow recovery from the other party's counsel. *See, e.g.*, *Monk v. Roadway Express, Inc.*, 599 F.2d 1378, 1383 (5th Cir. 1979) (refusing to read the attorney's fees provisions in 42 U.S.C. §§ 1988 and 2000e-5(k) to "authorize the imposition of attorneys' fees against an unsuccessful party's attorneys"), *aff'd in relevant part sub nom. Roadway Express, Inc. v. Piper,* 447 U.S. 752 (1980); *accord Hyde v. Midland Credit Mgmt., Inc.*, 567 F.3d 1137, 1140–41 (9th Cir. 2009) (noting that "there is a general presumption that an attorney is generally not liable for fees unless that prospect is spelled out," and holding that attorneys are not liable under the FDCPA (quotation omitted)).

Section 1692k(a)(3) says only that "the court may award to the defendant attorney's fees . . . ." It is silent as to whether a plaintiff's attorney may be ordered to pay them. Unlike 28 U.S.C. § 1927 or Rule 11, there is no language

No. 18-50661

that specifically and explicitly permits the courts to depart from the common law and make fee awards against lawyers.[2] Consistent with our interpretation of 42 U.S.C. §§ 1988 and 2000e-5(k) in *Monk*, we hold that 15 U.S.C. § 1692k(a)(3) permits fee awards only against parties, not against their counsel. *Cf. Gahagan*, 911 F.3d at 303 ("The Supreme Court has repeatedly instructed us to apply consistent interpretations to federal fee-shifting statutes.").

The district court was wrong to rely on § 1692k(a)(3) as a basis for sanctioning Tejero's counsel.

C.

While we agree with Tejero that the district court erred in sanctioning his lawyers, we are not prepared to order Portfolio Recovery to pay Tejero's fees and costs. Tejero premised his request on 15 U.S.C. § 1692k(a)(3). That section required Tejero to show that he brought "a[] successful action to enforce [FDCPA] liability." 15 U.S.C. § 1692k(a)(3). Our circuit has not previously decided whether a private settlement renders the action "successful" under § 1692k(a)(3). True, private settlements generally do not suffice for fee-shifting statutes like 42 U.S.C. § 1988(b). *See, e.g.*, *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001); *Davis v. Abbott*, 781 F.3d 207, 214 (5th Cir. 2015). But there are textual differences between the FDCPA and § 1988(b). And the district court did not have an

---

[2] Section 1927 reads:

> Any *attorney* or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy *personally* the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (emphases added). And Rule 11 permits a court to "impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." FED. R. CIV. P. 11(c)(1).

No. 18-50661

opportunity to evaluate them because it erroneously rejected Tejero's fee application on the basis of his purportedly sanctionable conduct. Now that we have corrected that mistake, we leave for the district court's consideration in the first instance the important question of whether Tejero is entitled to fees under the FDCPA. *See Ultra Petroleum Corp. v. Ad Hoc Comm. of Unsecured Creditors of Ultra Res., Inc.* (*In re Ultra Petroleum Corp.*), 943 F.3d 758, 766 (5th Cir. 2019) ("[W]e are a court of review, not of first view." (quotation omitted)).

## III.

Finally, Tejero appeals the denial of his recusal motion. Again, our review is for abuse of discretion. *See Henderson v. Dep't of Pub. Safety & Corr.*, 901 F.2d 1288, 1296 (5th Cir. 1990). This time, we don't find it.

Tejero's motion to recuse Judge Sparks relied on 28 U.S.C. §§ 144 and 455. These provisions require recusal if a judge "has a personal bias" concerning a party, 28 U.S.C. §§ 144, 455(b)(1), if "his impartiality might reasonably be questioned," *id.* § 455(a), or if he has "personal knowledge of disputed evidentiary facts concerning the proceeding," *id.* § 455(b)(1).

Sections 144 and 455(b)(1) are governed by the same principles. *Liteky v. United States*, 510 U.S. 540, 548–51 (1994). And because these provisions use the word "party," "[b]ias for or against an attorney, who is not a party, is not enough to require disqualification unless it can also be shown that such a controversy would demonstrate a bias for or against the party itself." *Henderson*, 901 F.2d at 1296. "In order for bias against an attorney to require disqualification of the trial judge, it must be of a continuing and personal nature and not simply bias against the attorney or in favor of another attorney because of his conduct." *Ibid.*

Additionally, the Supreme Court has directed us to consider whether the judge's views are "extrajudicial." *Liteky*, 510 U.S. at 551. An opinion is not

extrajudicial if it was "formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings." *Id.* at 555. Non-extrajudicial facts "do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Ibid.* Even the presence of extrajudicial facts, without something more, does not suffice to show bias. *Id.* at 554.

Finally, when applying § 455(a), a court must determine "whether a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality." *United States v. Jordan*, 49 F.3d 152, 155 (5th Cir. 1995). Whether the judge is in possession of extrajudicial facts is also relevant to recusal motions under this subsection. *Liteky*, 510 U.S. at 554.

A.

First, Judge Sparks's alleged bias was not based on extrajudicial knowledge. The Attorney-Appellants make much of the fact that the judge looked beyond the record in *Tejero*. They decry the judge's mention of other FDCPA cases in which the attorneys acted as plaintiff's counsel. But Judge Sparks presided over three of the cases mentioned in the sanctions order and disciplinary referral—*Ozmun v. Portfolio Recovery Assocs., LLC*, No. 1:16-cv-940 (W.D. Tex.); *Palomo v. Portfolio Recovery Assocs., LLC*, No. 1:16-cv-628 (W.D. Tex.); and *Jones v. Midland Funding, LLC.*, No. 1:16-cv-592 (W.D. Tex.). His knowledge of the facts of those cases was not extrajudicial. *See United States v. Reagan*, 725 F.3d 471, 491 (5th Cir. 2013) (holding that information about a party gained from an unrelated trial was not extrajudicial).

The Attorney-Appellants also complain that Judge Sparks included other cases—including some over which he did not preside—in his letter to the disciplinary committee. But the list took no special effort to compile: It was simply a record generated by the ECF system of every case before the Western

No. 18-50661

District of Texas in which Tejero attorney Ms. Chatman had entered an appearance. And it is evident from the "-SS" suffix to the case numbers that Judge Sparks was assigned to half of them. Again, information about those cases is not extrajudicial. As for the other half, because Judge Sparks's method of compiling the list of cases was evenhanded and well within the normal day-to-day activities of a judge presiding over a similar case, we do not think their inclusion in the list to be problematic. *See ibid.* ("[F]acts learned by a judge in his or her judicial capacity regarding the parties before the court cannot be the basis for disqualification." (quotation omitted)).

The Attorney-Appellants' gripe is not just that Judge Sparks listed these cases, but that he appears to have reviewed the docket of each case (including cases over which he did not preside) to determine whether they were brought under the FDCPA with a similar dispute letter. For that, the Attorney-Appellants have only themselves to blame. In their request for fees, Tejero's attorneys identified a number of other FDCPA cases in which they had participated. The attorneys provided the case names in the hope that the judge would review those cases and conclude that the lawyers' experience justified their billing rates. Judge Sparks did just that—he reviewed the dockets of the Attorney-Appellants' FDCPA cases. Evidently, they do not like what he found. But that does not give the Attorney-Appellants grounds to allege bias.

B.

Given that Judge Sparks did not possess extrajudicial knowledge of Tejero or his attorneys, Tejero bears the burden of showing that the judge "display[ed] a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. The judge did not. Judge Sparks's categorization of Tejero's claims as part of a "scheme" certainly reveals a degree of distaste towards the attorneys and their frequent resort to claims premised on statutory damages. But "expressions of impatience,

16

dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display," do not establish bias. *Id.* at 555–56.

The judge's ire was clearly directed at Tejero's lawyers, not their client: His April 2018 order and the referral letter set out concerns solely about the *lawyers'* supposedly unprofessional behavior, and it is the lawyers whom he chose to sanction. This reaction stems from the lawyers' conduct, rather than from bias of "a continuing and personal nature," and does not require recusal. *Henderson,* 901 F.2d at 1296.

Further, there is no indication that Judge Sparks harbors a deep-seated antagonism towards Tejero that would make fair judgment impossible. To the contrary, the judge expressed some concern that Tejero was an "unsophisticated debtor[]" who had not been told about the offer of settlement. Again, the record does not reveal improper animus towards Tejero himself.

For these reasons, we affirm Judge Ezra's finding that a "reasonable person, knowing all of the facts and circumstances surrounding this case, would [not] question Judge Sparks's impartiality or fairness to the parties."

\*    \*    \*

The judgment of the district court is REVERSED in part, AFFIRMED in part, and REMANDED for further proceedings.

17