# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 24, 2022

Lyle W. Cayce
Clerk

No. 19-50397

Joseph Ozmun,

*Plaintiff—Appellant - Cross - Appellee*,

Michael J. Wood; Celetha C. Chatman; Community Lawyers Group,

*Appellants—Cross - Appellees*,

*versus*

Portfolio Recovery Associates, L.L.C.; Rausch, Sturm, Israel, Enerson; Hornick, L.L.C.,

*Defendants—Appellees - Cross - Appellants*,

--------------------------------------------------------------

Joseph Ozmun,

*Plaintiff—Appellant - Cross - Appellee*,

Michael J. Wood; Celetha C. Chatman; Community Lawyers Group,

*Appellants—Cross - Appellees*,

*versus*

Portfolio Recovery Associates, L.L.C.,

No. 19-50397

*Defendant—Appellee - Cross - Appellant*,

------------------------------------------------------------

Joseph Ozmun,

*Plaintiff—Appellant - Cross - Appellee*,

Michael J. Wood; Celetha C. Chatman; Community Lawyers Group,

*Appellants—Cross - Appellees*,

*versus*

Portfolio Recovery Associates, L.L.C.,

*Defendant—Appellee - Cross - Appellant*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:16-CV-000940-SS

---

Before Owen, *Chief Judge*, and Dennis, and Haynes, *Circuit Judges*.
Per Curiam:*

This dispute over attorneys' fees stems from three suits brought by Joseph Ozmun (Ozmun) against Portfolio Recovery Associates (PRA) and Rausch, Sturm, Israel, Enerson, & Hornick, LLC (RSIEH) (collectively the "Debt Collection Defendants") for violations of the Fair Debt Collection

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-50397

Practices Act[1] (FDCPA) and the Texas Fair Debt Collection Practices Act[2] (TFDCPAA).  Though the debts involved were relatively small and were ultimately settled for less than their value, both parties contest the district court's ruling on the Debt-Collection Defendants' motion for attorneys' fees under the FDCPA, the TFDCPA, Federal Rule of Civil Procedure 11, and 28 U.S.C. § 1927.

Michael J. Wood, Celetha C. Chatman, and the Community Lawyers Group ("Wood and Chatman") were Ozmun's attorneys in the district court and are now parties to this appeal.  They allege that district court Judge Sparks acted with improper personal hostility toward them throughout the proceedings in this and similar cases they had brought on behalf of other clients.  They claim this animosity led Judge Sparks to erroneously award attorneys' fees against them for their good-faith conduct as Ozmun's counsel. The Debt-Collection Defendants, by contrast, argue that the claims in this and the other similar cases were part of a larger fraudulent scheme by Wood and Chatman in which they sent intentionally unclear debt dispute letters to debt collection agencies on behalf of their clients in order to induce the agencies to arguably violate the FCDPA and TFDCPA, allowing Wood and Chatman to bring bad-faith claims against the agencies in order to garner attorneys' fees under the fee shifting provisions those statutes provide. Accordingly, the Debt-Collection Defendants argue that Judge Sparks did not err in awarding attorneys' fees against Wood and Chatman under the FDCPA and the TFDCPA, and in fact erred in not awarding additional attorneys' fees against Wood and Chatman under Rule 11 and § 1927. Additionally, Ozmun argues that the district court erred in denying his

---

[1] 15 U.S.C. § 1692.

[2] Tex. Fin. Code § 392.202(a).

request for attorneys' fees against the Debt Collection Agencies under the FDCPA.

Because we hold that the district court erred in finding that Wood and Chatman acted in bad faith, and thus erred in awarding attorneys' fees against them, we REVERSE IN PART, AFFIRM IN PART, and REMAND for further proceedings consistent with this opinion.

## I. Facts and Procedural History

### A. The Three Suits

This matter arises out of three separate suits that were consolidated by the district court. In the first case, Ozmun alleged violations of the FDCPA and the TFDCPA against the Debt-Collection Defendants. Ozmun's allegations arose from attempts by the Debt-Collection Defendants to collect an allegedly defaulted credit card debt from Ozmun ("the First Debt"). On May 31, 2016, PRA received a letter from Ozmun (the "First Dispute Letter") that stated in relevant part:

> I am writing to you regarding the account referenced above. I refuse to pay this debt. My monthly expenses exceed my monthly income; as such there is no reason for you to continue contacting me, and the amount you are reporting is not accurate either. If my circumstances should change I will be in touch.

Approximately two months after PRA had received the First Dispute Letter, PRA reported the First Debt to a credit reporting agency. It did not indicate that the debt was disputed.

PRA—through its attorneys, RSIEH—filed suit against Ozmun in Texas state court to collect the First Debt. While the case was pending, Ozmun made a payment of $57.00 towards the First Debt. Five months later, PRA filed a motion for default judgment in the collection case seeking

$2,065.21, the original total debt Ozmun allegedly owed without a deduction for the $57.00 he had paid. Ozmun was represented in this action by Wood and Chatman, who handled the filings and managed the litigation, and Tyler Hickle, a third Community Lawyers Group attorney, with whom Ozmun communicated directly.

Ozmun subsequently filed the first action underlying this appeal in the district court (the "First Proceeding"), alleging that the debt collection efforts by the Debt-Collection Defendants were in violation of the FDCPA because they had reported the debt to a credit reporting agency without reporting that the debt had been challenged and because they had failed to credit the $57.00 that he had already paid toward that debt they had attempted to recover in the state court proceeding. He presented the Debt-Collection Defendants with a settlement demand of $6,500. According to Ozmun, the Debt-Collection Defendants agreed to the settlement. Thereafter, however, PRA informed Ozmun's counsel that any settlement must include a "global release"—a release of any and all claims that Ozmun may have against PRA, including all claims that were not raised in the First Proceeding. Ozmun filed a motion to enforce the $6,500 settlement without the global release provision. The district court denied Ozmun's motion as presenting only "he said/she said:" evidence of a settlement agreement, stating in its order that it was "troubling that a $6,500 case is in the United States District Court" and bemoaning the costs incurred by the parties' lawyers in their efforts to settle the case, noting that the court would "ultimately determine costs and perhaps attorney's fees and has a long memory."

RSIEH then filed for summary judgment on Ozmun's claims, asserting that they were meritless and had been brought in bad faith. The district court deferring ruling on the motion pending negotiations between the parties, encouraging them to come to a settlement agreement. In its

No. 19-50397

order, the district court "caution[ed] Plaintiff Ozmun that this case could warrant sanctions if the only basis for this lawsuit is a technical violation involving $57.00 (if any violation at all)." Subsequently, PRA also filed for summary judgement, echoing RSIEH's claims and arguing that Ozmun's dispute of the debt had been fabricated by his attorneys to manufacture a lawsuit. PRA also contended that Ozmun had failed to demonstrate any actual injury[3] resulting from his allegations. Ozmun responded in opposition and filed his own cross-motion for summary judgment.

While the cross motions were pending, Ozmun filed a second and third suit against PRA (the "Second Proceeding" and the "Third Proceeding," respectively). In the Second and Third Proceedings, Ozmun alleged that PRA had engaged in similar false and misleading credit reporting regarding two more of his credit-card debts (the "Second Debt" and the "Third Debt," respectively). Ozmun had sent PRA two additional letters disputing the Second and Third Debts (the "Second Dispute Letter" and the "Third Dispute Letter," respectively) with wording essentially identical to that contained in the First Dispute Letter. According to Ozmun, PRA also reported the Second and Third Debts without disclosing that Ozmun had disputed them.

In the First Proceeding, the district court granted in part and denied in part the Debt-Collection Defendants' pending summary judgment motions and denied Ozmun's cross-motion, determining that, although Ozmun lacked standing to pursue his claims under the TFDCPA because he did not assert actual damages[4] or request injunctive relief, his allegations of

---

[3] The TFDCPA requires actual damages when requesting relief other than an injunction. Tex. Fin. Cod. § 392.403.

[4] Ozmun argues that the district court's finding is contradicted by his deposition testimony regarding the damage caused by PRA to his credit score and reputation.

misconduct and injury were sufficient for his FDCPA claims to proceed to trial. PRA then moved to consolidate the Second and Third Proceedings into the First Proceeding, which the district court granted,[5] and the Debt-Collection Defendants proceeded to file another, joint motion for summary judgement in the consolidated cases, raising largely the same arguments as in the prior summary judgment motions. The district court again granted the motion in part and denied it in part, ruling that Ozmun did not have standing to bring his TFDCPA claims but that the issue of damages under the FDCPA was a genuine issue of material fact for which a trial was required.

## B. Judge Sparks' Disciplinary Referral and the Recusal Motion

While the three consolidated claims were proceeding before him, Judge Sparks sent a disciplinary referral letter (the "Disciplinary Referral Letter") to the Admissions and Disciplinary Committee for the Western District of Texas (the "Disciplinary Committee"). The stated purpose of the letter was to "refer the conduct" of certain attorneys to the Disciplinary Committee for review. Judge Sparks named, among others, Wood and Chatman as attorneys that he sought to have investigated for potential disciplinary action. In the letter Judge Sparks asserted that there was evidence that the named attorneys were "involved in a scheme to force settlements from debt collectors by abusing the FDCPA." He contended the attorneys were abusing the statute by inducing different clients to send identical debt dispute letters to debt collection agencies then filing suits alleging violations of the FDCPA based on the debt collectors' failure to

---

[5] On the same day, the district court entered a scheduling order directing Ozmun to submit a written settlement offer to the Debt-Collection Defendants and to serve his designation of potential witnesses, testifying experts, and proposed exhibits by November 1, 2017. Ozmun missed this deadline and Appellees moved for sanctions and contempt. The district court awarded monetary sanctions of $10,065 jointly against Ozmun and his attorneys.

acknowledge the disputes when reporting those debts to credit reporting agencies. Judge Sparks opined that the language of these letters was "unclear on whether a debt is being disputed or not[.]" Wood and Chatman now argue that Judge Sparks omitted a "critical point from this accusation[:]" that, in a companion case to one of the cases he cited in the Disciplinary Referral Letter, another presiding judge had ruled that the same language included in the dispute letters was a clear and valid debt dispute and had accordingly granted the plaintiff in that case summary judgment on the exact issue. *Jones v. Portfolio Recovery Associates, LLC*, Case No. 1:16-CV-572-RP, 2017 U.S. Dist. LEXIS 216568, *10-11 (W.D. Tex. Aug. 16, 2017).

The Screening Subcommittee of the Disciplinary Committee (the "Screening Subcommittee") ultimately issued findings disagreeing with Judge Sparks' disciplinary referral and finding that the attorneys named therein had not acted in bad faith. As of this ruling, the Disciplinary Committee has taken no action to discipline Wood or Chatman.

Also while the consolidated claims in this case were proceeding, Judge Sparks entered sanctions against Wood and Chatman in another then-pending case, *Tejero v. Portfolio Recovery Associates LLC, et al.*, Case No. 1:16-CV-767.3,[6] which involved claims against PRA similar to those Ozmun had brought. Using much the same language as in his disciplinary referral, Judge Sparks ruled in that case that Wood and Chatman were involved in a "scheme to force settlements from debt collectors by abusing the FDCPA."

## C. Settlement and Attorneys' Fees

A week before the trial was due to begin, Ozmun proposed a new settlement offer. The Debt-Collection Defendants agreed, and the parties filed a joint notice of settlement, setting forth that Ozmun would dismiss his

---

[6] On appeal *Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453 (5th Cir. 2020).

FDCPA claims against The Debt-Collection Defendants in exchange for $1,250, with both parties reserving the right to file fee applications. After tendering a cashier's check, the Debt-Collection Defendants moved to dismiss, and the district court granted the motion, dismissing the suit with prejudice.

The Debt-Collection Defendants then filed a motion for attorneys' fees and costs. They argued that Wood and Chatman had acted in bad faith throughout the litigation and that The Debt-Collection Defendants were therefore entitled to an award of attorney's fees under the FDCPA's fee shifting provision, § 1692k(a)(3), the TFDCPA's fee shifting provision, § 392.403(c), Rule 11 of the Federal Rules of Civil Procedure, and 28 U.S.C. § 1927.[7] RSIEH demanded $114,773.03, and PRA $84,732.83. On the same day, Ozmun filed a motion for attorneys' fees asserting that, because he had successfully received a settlement in the consolidated cases, he qualified as a prevailing party for purposes of the FDCPA's fee shifting provision and therefore he—and not the Debt-Collection Defendants—should recover attorneys' fees under 15 U.S.C. § 1692k(a)(3). Ozmun sought a total of $35,461.00.

The district court denied Ozmun's request for attorneys' fees. The court found that Ozmun's TFDCPA claims were brought in bad faith because the complaints failed to include sufficient allegations to support injunctive relief or actual damages, and that Wood and Chatman had brought all the claims in bad faith and for the purpose of harassment. The court stated that this "bad faith" made awarding attorneys' fees to Ozmun inappropriate.

---

[7] Rule 11 empowers federal courts to award sanctions under certain circumstances. *See* Fed. R. Civ. P. 11(b). 28 U.S.C. § 1927 allows courts to order any attorney who "unreasonably and vexatiously" multiplies the proceedings in a case to pay the costs and attorney's fees incurred by this conduct. 28 U.S.C. § 1927.

No. 19-50397

It then granted in part and denied in part the motion by the Debt-Collection Defendants. The court rejected the Debt Collection Defendants' Rule 11 and § 1927 arguments but granted them attorney's fees under the fee shifting provisions of the FDCPA and the TFDCPA. In its order, the district court repeated the accusation that Wood and Chatman had "manufactured a case by misusing federal and state debt collection statutes . . . in an attempt to augment their attorneys' fees" under the FDCPA and TFDCPA's fee shifting provisions. Thus, the court ordered Wood and Chatman, rather than Ozmun, to pay PRA $84,732.83 and RSIEH $78,894.99 in attorneys' fees.

Ozmun, Wood, and Chatman now appeal the district court's order. The Debt-Collection Defendants cross-appeal, asserting that the district court should also have granted them additional fees under Rule 11 and 28 U.S.C. § 1927. RSIEH also appeals a reduction in the rate allowed for one of its attorneys in the fees the district court did award.

## II. Standard of Review

This court reviews a district court's imposition or denial of sanctions, including attorneys' fees, under an abuse of discretion standard. *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802-03 (5th Cir. 2003). "In evaluating whether the district court abused its discretion to award attorneys' fees, this court reviews the underlying factual findings for clear error and the conclusions of law *de novo*." *Dearmore v. City of Garland*, 519 F.3d 517, 520 (5th Cir. 2008) (citing *Energy Mgmt. Corp. v. City of Shreveport*, 467 F.3d 471, 482 (5th Cir. 2006)). A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts. *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003).

No. 19-50397

## III. Analysis

### A. FDCPA

We address first Wood and Chatman's argument that the district court erred in awarding attorneys' fees against them personally, as Ozmun's counsel, under § 1692(k)(a)(3). This issue is conclusively resolved in Wood and Chatman's favor by our recent decision in *Tejero v. Portfolio Recovery Assocs., L.L.C.*,[8] in which we held that Section 1692k(a)(3) does not authorize the award of attorneys' fees against counsel. 955 F.3d 453 (5th Cir. 2020) ("Section 1692k(a)(3) says only that 'the court may award to the defendant attorney's fees . . . .' . . . Unlike 28 U.S.C. § 1927 or Rule 11, there is no language that specifically and explicitly permits the courts to depart from the common law and make fee awards against lawyers."). Thus, the district court's erred in awarding attorneys' fees to the Debt-Collection Defendants against Wood and Chatman under FDCPA § 1692(k)(a)(3).

### B. TFDCPA

We next address whether the district court erred in awarding attorney's fees to the Debt-Collection Defendants against Wood and Chatman as Ozmun's counsel under the TFDCPA. Wood and Chatman argue that, because the FDCPA's fee shifting provision cannot be used to sanction a plaintiff's attorneys, the district court also erred in awarding the Debt-Collection Defendants attorneys' fees and costs against Ozmun's attorneys under § 392.403. They argue that § 392.403(c) is almost word-for-word identical to the sanctions provision of §1692k(a)(3), and that "[i]dentical statutes demand identical interpretations." We agree.

---

[8] Foretold by *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337 (7th Cir. 2018).

No. 19-50397

Aside from standard principles of statutory construction, Texas state court precedents confirm that the TFDCPA should be construed in the same manner as the FDCPA.[9] Additionally, Texas state courts routinely discuss Texas' jurisprudence on attorneys' fees and statutory fee shifting using the same reasoning as our court employed in *Tejero* when discussing the parallel federal jurisprudence.  For example, our court in *Tejero* stated that fee shifting statutes should be strictly construed against recovery because of the long-standing and deeply established nature of the so-called 'American Rule' in which parties bear their own attorney's fees.  *See Tejero*, 955 F.3d at 462-63 ("Because of the common-law origins of the [American Rule], statutes that alter it are to be read with a presumption favoring the retention of long-established and familiar legal principles. . . . . That a statute is sufficiently specific and explicit to authorize one type of fee award does not make it sufficiently specific and explicit to authorize another type of fee award." (citing *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015) (internal quotation marks omitted)).  Similarly, Texas courts have noted that "Texas has long adhered to the American Rule with respect to awards of attorney's fees," *Tucker v. Thomas*, 419 S.W.3d 292, 295 (Tex. 2013), and thus "[a]ny award of fees is limited by the wording of the statute or contract that creates an exception to the American Rule." . *JCB, Inc. v. Horsburgh & Scott Co.*, 597 S.W.3d 481, 491 (Tex. 2019), *reh'g denied* (Oct. 4, 2019).

---

[9] *See, e.g.*, In *re Eastman*, 419 B.R. 711, 731 (Bankr. W.D. Tex. 2009) "[T]he structure of the Texas statute is modeled on the federal enactment and so should be similarly construed. . .. Stated another way, for the same reasons that the Defendants are liable under § 1692e(5) of the FDCPA in the Fifth Circuit, they are liable under § 392.301(a)(8)") (internal citations removed); *see also Prophet v. Joan Myers, Myers & Assocs., P.C.,* 645 F.Supp.2d 614, 617 (S.D.Tex.2008) ("... the conduct made unlawful by that act is virtually identical to the conduct made unlawful by the FDCPA"). As the district court noted in its opinion in this case, "Section 392.403 of the Texas Finance Code is the TFDCPA's analogue to § 1692k(a)(3)."

We thus hold that the TFDCPA also does not authorize the award of attorney's fees as against a plaintiff's counsel.

### C. The Court's Inherent Power

Because "[this court] can affirm [the district court] on any ground supported by the record," *United States v. Mazkouri*, 945 F.3d 293, 307 (5th Cir. 2019), the Debt Collection Defendants argue that, even if neither of the statutes relied upon by the district court authorized the award of attorneys' fees against Wood and Chatman, we should nonetheless hold that all of the sanctions were appropriately levied under the court's inherent power. The Debt-Collection Defendants are correct that, in a situation where a party acts in bad faith and "neither the statute nor the rules [is] up to the task [of sanctioning the conduct], the court may safely rely on its inherent power" to assess attorney's fees. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). As we have stated, this is true even where a statute would otherwise govern the imposition of attorneys' fees in the case. *Boland Marine Mfg. Co. v. Rihner*, 41 F.3d 997, 1005 (5th Cir. 1995) (quoting *Chambers*, 501 U.S. 32, 50). However, a specific finding that the sanctioned party acted in bad faith is a prerequisite for the imposition of such inherent-power sanctions. *Dawson v. United States*, 68 F.3d 886, 895 (5th Cir. 1995).

In its discussion of the award of attorneys' fees under FDCPA and TFDCPA, the district court found that Chatman and Wood acted in bad faith because they "manufactured a case by misusing federal and state debt collection statutes" by directing clients to send deliberately misleading debt dispute letters. But this finding appears to have been made *sua sponte* and in the absence of any evidence; no party argued or introduced evidence that the debt dispute letters Ozmun sent were "deliberately deceptive and intentionally confusing" before the district court found they were so. Moreover, multiple courts have found identically worded debt dispute letters

No. 19-50397

to be clear and entirely sufficient to dispute a debt under the FDCPA. As this court stated in *Tejero*, which involved an identically worded debt dispute letter and in which this court reversed Judge Sparks' sanctions order against the plaintiff's attorneys for essentially the same conduct as in this case,

> Here, the district court found the Attorney-Appellants "intentionally" drafted an unclear dispute letter. The relevant part of the letter reads: "My monthly expenses exceed my monthly income . . . and the amount you are reporting is not accurate either." Aside from invoking the word "dispute," we struggle to see how a debtor could dispute a debt more clearly than by writing, "the amount you are reporting is not accurate.". . . We are not alone on this issue. The Seventh Circuit, and every district court within it to have considered the matter, has concluded that the phrase "the amount reported is not accurate" unambiguously and clearly "dispute[s]" a debt—"[t]here is simply no other way to interpret this language."

*Tejero*, 955 F.3d at 460-61 (citing *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 346 (7th Cir. 2018)); *see also Jones v. Portfolio Recovery Associates, LLC*, Case No. 1:16-CV-572-RP (W.D. Tex. Aug. 16, 2017) (jury verdict of $61,000 on nearly identical claims for improper credit reporting).

The district court also found that Ozmun's claim under the TFDCPA was brought in bad faith because it was not a request for injunctive relief and did not plead actual damages. But Ozmun pleaded damage to his credit report and reputation, which are cognizable injuries. *See Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246 (5th Cir. 2017) (identifying non-monetary actual harm caused by failing to credit-report a consumer's dispute). The *Tejero* court also concluded that that plaintiff had a non-frivolous basis to bring his claim under the TDCA even if he lost on that issue on summary judgment under essentially the same underlying facts as in this case. To again quote this court's opinion in *Tejero*:

No. 19-50397

> "[I]t's also possible the district court thought the claims were brought for an improper purpose—to drum up business for the lawyers and extract attorney's fees from unsuspecting debt collectors.  But when a complaint is well grounded in fact and warranted by existing law, only under unusual circumstances should the filing of papers constitute sanctionable conduct.  And the inquiry into whether an improper purpose or unusual circumstances existed should be based on the objective reasonableness of the filing, not subjective suspicion.

*Tejero*, 955 F.3d  at 460 (internal quotation marks and citations removed); *see also Nat'l Ass'n of Gov't Emps.*, 844 F.2d at 224 ("[P]urely subjective elements should not be reintroduced into the determination concerning 'improper purpose.'"); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016) ("An attorney's conduct is judged under each standard with an objective, not a subjective, standard of reasonableness.").

Here, as also occurred in *Tejero*, "the district court *denied* PRA cross-motion for summary judgment on the FDCPA claim—which indicates [Appellant's] position was far from frivolous.  In fact, it was so substantial that the district court thought it warranted a trial." *Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 459 (5th Cir. 2020) (emphasis original).  Thus, Ozmun's claims brought under the TFDCPA were not a "clear misuse of the TFDCPA" as the district court stated.  They simply failed on summary judgment.  For these reasons, we hold that the district court erred in finding that Wood and Chatman acted in bad faith, and thus we decline to affirm the award of attorney's fees against them under the court's inherent power.

### D. Rule 11 and 28 U.S.C. § 1927

For much the same reasons that we hold the sanctions against Wood and Chatman cannot be upheld as an exercise of the district court's inherent power, we hold also that the district court was correct to deny the Debt-Collection Defendant's additional attorneys' fees under Rule 11 and 28

U.S.C. § 1927. When not based on factual inaccuracies, Rule 11 permits sanctions only upon a specific finding that a filing was made for an improper purpose or that the legal contentions are frivolous. Fed. R. Civ. Pro. 11(b). Similarly, 28 USC § 1927 requires that a court find that counsel has "unreasonably and vexatiously" multiplied the costs of the proceeding. 28 USC § 1927. Because we hold that there is no evidence that Wood and Chatman acted in bad faith, we hold that there is no basis for concluding they made filings for an improper purpose, asserted frivolous legal theories, or unreasonably and vexatiously multiplied costs. Accordingly, the district court was correct to deny attorneys' fees under these provisions.

## E. Denial of Attorneys' fees to Ozmun

Finally, Ozmun argues that the district court erred in denying his request for attorneys' fees under § 1692k(a)(3). As noted by the district court, courts may refuse to award attorneys' fees requested under § 1692k(a)(3) to prevailing plaintiffs where "special circumstances would render such an award unjust." *Davis v. Credit Bureau of the South*, 908 F.3d 972, 975 (5th Cir. 2018) (per curiam) (quoting *Romain v. Walters*, 856 F.3d 402, 407 (5th Cir. 2017)). The district court found such special circumstances to exist given its determination that Ozmun, via his attorneys, acted in bad faith. Because we have found that determination to be in error, we consider Ozmun's assertion that the private settlement he ultimately received constitutes a "successful action to . . . enforce liability under the FDCPA" and that he may thus recover attorneys' fees from the Debt Collection Defendants. 15 U.S.C. § 1692k(a)(3).

Our circuit has not previously decided whether a private settlement renders the action "successful" under § 1692k(a)(3). Here, as in *Tejero*, the district court did not have an opportunity to evaluate this question because it erroneously rejected Ozmun's fee application on the basis of his purportedly

No. 19-50397

sanctionable conduct. Now that we have corrected that mistake, we follow *Tejero*'s lead and remand this question for the district court's consideration in the first instance of whether Ozmun is a prevailing party entitled to attorneys' fees under the FDCPA. *See Tejero*, 955 F.3d at 462-63 ("True, private settlements generally do not suffice for fee-shifting statutes like 42 U.S.C. § 1988(b). But there are textual differences between the FDCPA and § 1988(b).") (internal citations removed); *see also Ultra Petroleum Corp. v. Ad Hoc Comm. of Unsecured Creditors of Ultra Res., Inc.* (*In re Ultra Petroleum Corp.*), 943 F.3d 758, 766 (5th Cir. 2019) ("[W]e are a court of review, not of first view.") (quotation omitted).

## V. Conclusion

For the foregoing reasons, we REVERSE in part, AFFIRM in part, and REMAND to the district court for further proceedings consistent with this opinion.